**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

| Chief Justice: | Justices: |
|---|---|
| Clifford W. Taylor | Michael F. Cavanagh |
| | Elizabeth A. Weaver |
| | Marilyn Kelly |
| | Maura D. Corrigan |
| | Robert P. Young, Jr. |
| | Stephen J. Markman |

FILED JULY 18, 2007

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                        No. 127897

MAURICE LAMONT NYX,

      Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, C.J.

The issue in this case is whether a defendant charged with a crime that the Legislature has divided into degrees, such as first-degree criminal sexual conduct (CSC I), may, pursuant to MCL 768.32(1), properly be convicted of a lesser degree of the charged offense, such as second-degree criminal sexual conduct (CSC II), where the crime of a lesser degree contains an element not within the charged offense of a greater degree. The Court of Appeals held that *People v Cornell*[1] forbids this result.

_____

[1] *People v Cornell*, 466 Mich 335; 646 NW2d 127 (2002).

We agree and hold that a defendant charged with an offense consisting of various degrees may not, consistent with MCL 768.32(1), be convicted of a lesser degree of the charged offense where the lesser degree contains an element not found within the higher degree. The judgment of the Court of Appeals is affirmed.

## I. FACTS AND PROCEEDINGS BELOW

Defendant was employed as the dean of a school in Detroit. A student accused defendant of having penetrated her vagina. As a result, defendant was charged with one count of CSC I by an actor who is in a position of authority over the victim and uses this authority to get the victim to submit to penetration of the vagina with a penis and the victim is at least 13 but less than 16 years of age. MCL 750.520b(1)(b)(iii). Defendant was also charged with two counts of CSC I by an actor who is in a position of authority over the victim and uses this authority to get the victim to submit to penetration of the vagina with a finger and the victim is at least 13 but less than 16 years of age. MCL 750.520b(1)(b)(iii).

The trial court presided over a bench trial. The complainant testified about the sexual penetration. A police officer testified that when questioned, defendant had admitted engaging in sexual contact but had denied that any penetration had occurred. The court acquitted defendant of the CSC I charges, stating that it "could not quite believe" the complainant's assertion that the penetration had

occurred and that "sometimes kids exaggerate."[2] The court then convicted defendant of two counts of CSC II (sexual contact for the purpose of sexual gratification with a complainant between 13 and 15 years of age). MCL 750.520c(1)(b)(*iii*).

Defendant appealed in the Court of Appeals, arguing that the trial court was without authority to consider the cognate lesser offense of CSC II. The prosecutor argued that MCL 768.32(1) authorized the trial court to convict defendant of CSC II, after having acquitted him of CSC I, because CSC is a crime divided into degrees. The Court of Appeals agreed with defendant, determining that the prohibition in *Cornell, supra,* against considering cognate lesser offenses had been violated.[3] The CSC II convictions were vacated, and the case was remanded for the entry of an order of discharge.

We granted the prosecutor's application for leave to appeal.[4]

## II. STANDARD OF REVIEW

---

[2] But, at a remand hearing held months later, the court puzzlingly stated on the record that that the prosecutor had shown CSC I, that the court "believed every word she [the complaint] said," and that the court had hoped that by giving defendant a break he would not have to go to prison. Defendant was, however, sentenced to concurrent prison terms of 3 to 15 years of imprisonment for his CSC II convictions.

[3] Unpublished opinion per curiam, issued January 13, 2005 (Docket No. 248094).

Whether MCL 768.32(1) permits a defendant to be convicted of an offense of a lesser degree that contains an element not found within the charged offense of a higher degree is a question of statutory interpretation that we review de novo.[5] When interpreting statutes, our goal is to give effect to the intent of the Legislature by applying the plain language of the statute.[6]

### III. ANALYSIS

MCL 768.32(1) provides:

> Except as provided in subsection (2),[7] upon an indictment for an offense, consisting of different degrees, as prescribed in this chapter, the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to commit that offense.

Pursuant to this language, when a defendant is charged with an offense "consisting of different degrees," the fact-finder may acquit the defendant of the charged offense and find the defendant "guilty of a degree of that offense inferior to that charged in the indictment . . . ."

---

(…continued)

[4] 474 Mich 1099 (2006).

[5] *People v Schaefer*, 473 Mich 418, 427; 703 NW2d 774 (2005).

[6] *People v Koonce*, 466 Mich 515, 518; 648 NW2d 153 (2002).

[7] Subsection 2 provides different rules regarding lesser included offenses when a defendant is charged with a major controlled substance offense.

There is no dispute that criminal sexual conduct is a crime the Legislature has divided into degrees. There is first-degree criminal sexual conduct,[8] second-degree criminal sexual conduct,[9] third-degree criminal sexual conduct (CSC III),[10] and fourth-degree criminal sexual conduct (CSC IV).[11] The elements of CSC II are not all subsumed within CSC I. While the prosecutor need not show the that perpetrator of a sexual penetration had any particular criminal intent in order to obtain a conviction of CSC I, MCL 750.520a(p), CSC II requires proof of one of several intents that are not always present when CSC I is committed.[12] Thus, CSC

---

[8] MCL 750.520b. CSC I is a felony punishable by imprisonment for life or any term of years. MCL 750.520b(2). A defendant convicted of CSC I may not be sentenced to probation. MCL 777.1

[9] MCL 750.520c. CSC II is a felony punishable by imprisonment for not more than 15 years. MCL 750.520c(2). A defendant convicted of CSC II is eligible for a probationary sentence. MCL 777.1

[10] MCL 750.520d. CSC III is a felony punishable by imprisonment for not more than 15 years. MCL 750.520d(2). A defendant convicted of CSC III may not be sentenced to probation. MCL 777.1.

[11] MCL 750.520e. CSC IV is a misdemeanor punishable by not more than two years of imprisonment. MCL 750.520e(2). A defendant convicted of CSC IV is eligible for a probationary sentence. MCL 777.1.

[12] "Sexual contact" is statutorily defined to mean the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for revenge, or to inflict humiliation, or out of anger. MCL 750.520a(o)

II is not a necessarily included lesser offense of CSC I.[13]  Rather, it is a cognate

lesser offense.[14]

The only question in the case at bar is whether CSC II, even though it is not

a necessarily included lesser offense of CSC I, is still "inferior" to CSC I.

As early as 1861, this Court pointed out in *People v McDonald*[15] that "It is

a general rule of criminal law, that a jury may acquit of the principal charge, and

find the prisoner guilty of an offense of lesser grade, if *contained within it.*"[16]

---

[13] Lesser offenses are divided into necessarily included lesser offenses and cognate lesser offenses.  An offense is considered a necessarily included lesser offense if it is impossible to commit the greater offense without first having committed the lesser offense.  *Cornell, supra* at 345.

[14] A cognate lesser offense is one that shares elements with the charged offense but contains at least one element not found in the higher offense.  *Cornell, supra* at 345.  We have found that CSC II is a cognate lesser offense of CSC I.  In *People v Lemons*, 454 Mich 234, 253-254; 562 NW2d 447 (1997), we held that

> because CSC II requires proof of an intent not required by CSC I, that defendant intended to seek sexual arousal or gratification, CSC II is a cognate lesser offense of CSC I. In short, it is possible to commit CSC I without first having committed CSC II.

We note that following the *Lemons* decision the CSC II statute was amended to add three other possible intents that would prove a CSC II, namely, an intentional touching "in a sexual manner for revenge, or to inflict humiliation or out of anger."  See n 12 of this opinion.

[15] *People v McDonald*, 9 Mich 149, 152 (1861) (emphasis added).

[16] This is consistent with the United States Supreme Court's statement in *Schmuck v United States*, 489 US 705, 717-718; 109 S Ct 1443; 103 L Ed 2d 734 (1989), that it is an ancient doctrine of the common law that a defendant cannot be held to answer a charge not contained in the indictment brought against the defendant.

Then, in 1869, in *Hanna v People*[17] this Court considered the similarly worded predecessor of MCL 768.32(1) and held that the statute should "be construed as extending to all cases in which the statute has substantially, or in effect, recognized and provided for the punishment of offenses of different grades, or degrees of enormity, *wherever the charge for the higher grade includes a charge for the less*." *Hanna, supra* at 321 (emphasis added).

In 2002, in *Cornell*, we overruled earlier cases that had allowed instructions on cognate lesser offenses and returned to the construction of the statute that had been given in *Hanna* and in Justice Coleman's dissent in *People v Jones*.[18] In summarizing Justice Coleman's dissent in *Jones*, we noted that Justice Coleman construed MCL 768.32 to only permit consideration of "necessarily included lesser offenses." *Cornell, supra* at 347. The *Cornell* Court, *id*. at 354, also cited with approval the following language from *People v Torres (On Remand)*:[19]

> We believe that the word "inferior" in the statute does not refer to inferiority in the penalty associated with the offense, but, rather, to the absence of an element that distinguishes the charged offense from the lesser offense. *The controlling factor is whether the lesser offense can be proved by the same facts that are used to establish the charged offense*. [Emphasis added.]

---

[17] *Hanna v People*, 19 Mich 315, 320-321 (1869).

[18] *People v Jones*, 395 Mich 379; 236 NW2d 461 (1975).

[19] *People v Torres (On Remand),* 222 Mich App 411, 419-420; 564 NW2d 149 (1997).

Thus, *Cornell* construed MCL 768.32(1) as limiting convictions of lesser offenses to those that are "necessarily included" lesser offenses. *Cornell, supra* at 356 n 9, 359.

We have made similar statements in subsequent cases. In *People v Mendoza*,[20] we stated:

> We are confident that we applied the appropriate canon of statutory construction in construing MCL 768.32 by giving "inferior offense" its common-law meaning when it was codified by the Legislature.

The *Mendoza* Court also stated:

> [W]e held [in *Cornell*] that *an inferior-offense instruction is appropriate only if the lesser offense is necessarily included in the greater offense,* meaning, all the elements of the lesser offense are included in the greater offense, and a rational view of the evidence would support such an instruction. [*Id.* at 533 (emphasis added).]

The *Mendoza* Court went on to conclude:

> [T]he elements of voluntary and involuntary manslaughter are included in the elements of murder. Thus, both forms of manslaughter are necessarily included lesser offenses of murder. *Because voluntary and involuntary manslaughter are necessarily included lesser offenses, they are also "inferior" offenses* within the scope of MCL 768.32. [*Id.* at 541 (emphasis added).]

Similarly, in *People v Nickens*,[21] we unanimously reiterated the *Cornell/Mendoza* construction of MCL 768.32(1), stating:

---

[20] *People v Mendoza*, 468 Mich 527, 532 n 2; 664 NW2d 685(2003).

[21] *People v Nickens*, 470 Mich 622, 626; 685 NW2d 657 (2004). In *Nickens, supra* at 624, we held that assault with intent to commit CSC involving sexual penetration, MCL 750.520g(1), was a necessarily included lesser offense of CSC I, conduct involving personal injury and the use of force or coercion to accomplish sexual penetration. MCL 750.520b(1)(f).

In *Cornell, supra* at 357, this Court held that, under MCL 768.32, a lesser offense instruction is appropriate only if the lesser offense is necessarily included in the greater offense. "Necessarily included lesser offenses are offenses in which the elements of the lesser offense are completely subsumed in the greater offense." *Mendoza, supra* at 532 n 3.

Consistently with *McDonald, Hanna, Torres, Cornell, Mendoza,* and *Nickens,* we hold that MCL 768.32(1) precludes a judge or a jury from convicting a defendant of a cognate lesser offense even if the crime is divided into degrees. We do this because the word "inferior" in MCL 768.32(1) is best understood as meaning an offense that is necessarily included in the greater charge.

To reiterate, MCL 768.32(1) requires the lesser offense to be inferior to the charged offense, and an offense is only inferior when all the elements of the lesser offense are included within the greater offense. Thus, even if the crime is divided by the Legislature into degrees, the offense of a lesser degree cannot be considered under MCL 768.32(1) unless it is inferior, i.e., is within a subset of the elements of the charged greater offense. Given that all the elements of CSC II are not included within CSC I, the trial court was without authority to convict defendant of CSC II after it acquitted him of CSC I. Thus, the Court of Appeals properly vacated defendant's convictions and remanded the case for the entry of an order of discharge.

The prosecution would have us interpret MCL 768.32(1) as forbidding instructions on cognate lesser offenses *except* when the Legislature has divided a

9

crime into degrees.[22] We reject this argument for a variety of reasons. First, it is contrary to over 130 years of caselaw construing the word "inferior" to mean only lesser crimes that are subsumed within the greater crime, and would require us to overrule numerous cases where we have so held. Also, it would return Michigan to an era when instructions on cognate lesser offenses were given. *Cornell* ended that era.

It is true that the prosecutor's construction would only allow cognate lesser offense instructions in cases where the Legislature has divided crimes into degrees. But there are many crimes that have been so divided by the Legislature. The list includes, at least, murder,[23] CSC,[24] home invasion,[25] child abuse,[26] vulnerable adult abuse,[27] retail fraud,[28] fleeing and eluding,[29] and money laundering.[30] Thus, if we were to adopt the position of the prosecution, we would have a situation in which instructions on cognate lesser offenses are not allowed

---

[22] We note that in *Mendoza*, *supra* at 533 n 5, we rejected the suggestion that our construction of MCL 768.32(1) in *Cornell*, that inferior offenses were limited to necessarily included lesser offenses, was dictum.

[23] MCL 750.316; MCL 750.317.

[24] MCL 750.520b through MCL 750.520e.

[25] MCL 750.110a.

[26] MCL 750.136b.

[27] MCL 750.145n.

[28] MCL 750.356c; MCL 750.356d.

[29] MCL 750.479a.

[30] MCL 750.411*l* through MCL 750.411o.

except in cases where a defendant is charged with any degree of murder, CSC, home invasion, child abuse, vulnerable adult abuse, retail fraud, fleeing and eluding, and money laundering other than the lowest degree of such offense.[31] We are persuaded that the bright-line rule of *Cornell,* which simply precludes conviction of cognate lesser offenses no matter the charge, is consistent with MCL 768.32(1) and is thus preferable.

Further, given that cognate lesser offenses contain at least one element not contained within the greater charge, there would be a due process concern if the prosecution's approach were adopted because defendants are entitled to know the charges against them.

In *Schmuck v United States*,[32] the United States Supreme Court stated:

> It is ancient doctrine of both the common law and of our Constitution that a defendant cannot be held to answer a charge not contained in the indictment brought against him. This stricture is based at least in part on the right of the defendant to notice of the charge brought against him. Were the prosecutor able to request an instruction on an offense whose elements were not charged in the indictment, this right to notice would be placed in jeopardy. [Citations omitted.]

In general, when a defendant is bound over on a "degreed" offense, the defendant is informed of the nature of the charges against him or her and of the

---

[31] We recognize that a cognate lesser offense may not exist for each of these formally degreed offenses. But, where they do exist, Justice Corrigan's view would wrongfully allow conviction of an offense that is not "inferior" to the crime charged.

11

elements that the prosecutor must prove beyond a reasonable doubt in order to obtain a conviction. If the prosecutor is allowed to seek a jury instruction on a cognate lesser offense, the prosecutor would essentially be asking the jury to convict the defendant on the basis of an element or elements against which the defendant did not have notice that he or she would be required to defend. As applied to this case, when defendant was bound over on the charges of CSC I, he was notified that the prosecutor had to prove beyond a reasonable doubt that he had engaged in sexual penetration with the victim. But the information did not serve to notify defendant that he was also subject to conviction of the cognate lesser offense of sexually touching the victim for the purpose of sexual arousal or gratification.

Thus, the adoption of the prosecutor's interpretation of the statute would render the statute subject to constitutional challenge. When there are two possible interpretations of a statute, by one of which it would be constitutional and by the other it would be constitutionally suspect, it is our duty to adopt the one that will save the statute.[33] Moreover, "[a] statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts

---

(…continued)

[32] *Schmuck v United States*, 489 US 705, 717-718; 109 S Ct 1443; 103 L Ed 2d 734 (1989).

[33] *Blodgett v Holden*, 275 US 142, 148; 48 S Ct 105; 72 L Ed 206 (1927).

upon that score."[34] We avoid such constitutional problems in this case by relying on a definition of a lesser "inferior" offense that has been recognized in our caselaw for over 130 years.

Given that a conviction of CSC II involves proof of an element that is not contained within an indictment of CSC I, there is a serious question whether the prosecutor's interpretation would render MCL 768.32(1) unconstitutional; but the interpretation that we reiterate today, which is consistent with over 130 years of caselaw, precludes any due process concern. Finally, the cognate regime ended by *Cornell* returned the charging power to the executive branch. This is as it should be and is consistent with this Court's longstanding separation of powers concerns in criminal charging matters.[35] See, e.g., *Genesee Prosecutor v Genesee Circuit Judge*, 386 Mich 672; 194 NW2d 693 (1972).[36]

## IV. THE ERROR WAS NOT HARMLESS

---

[34] *United States v Jin Fuey Moy*, 241 US 394, 401; 36 S Ct 658; 60 L Ed 1061 (1916), citing *United States ex rel Attorney General v Delaware & Hudson Co*, 213 US 366, 408; 29 S Ct 527; 53 L Ed 836 (1909).

[35] In her dissent in *People v Jones*, Justice Coleman pointed out that the prosecutor determines the initial charge and allowing the defendant to have an instruction regarding a cognate lesser offense could infringe "the prosecutor's right to decide what crime is to be charged." *Jones, supra* at 400 (Coleman, J., dissenting).

[36] See also *People v Perry,* 460 Mich 55, 63 n 19; 594 NW2d 477 (1999):

[T]he defendant has a right to notice of the charge, while the prosecutor has the right to select the charge and avoid verdicts on extraneous lesser offenses preferred by the defendant.

We reject any suggestion that the error that occurred here was harmless. When defendant went to trial, *People v Lemons* had held that CSC II was a cognate lesser offense of CSC I and *People v Cornell* had held that MCL 768.32(1) forbids consideration of cognate lesser offenses. Given this case law, the error was plain and we conclude that it seriously affected the "fairness, integrity or public reputation of judicial proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Defense counsel waived a jury, cross-examined witnesses, called a witness of his own, and made his closing argument in defense of a charge that defendant had sexually penetrated the complainant, i.e., CSC I. Given that controlling caselaw had established that it was improper to consider cognate lesser offenses and that CSC II was a cognate lesser offense of CSC I, it is not too surprising that defense counsel did not object to a police officer's testimony that defendant had admitted a touching. Neither the prosecutor nor defense counsel asked the court to consider convicting defendant of CSC II. That is, the case was submitted to the court as an all-or-nothing case.

In rendering its verdict, the trial court acquitted defendant of CSC I. Thus, defense counsel was successful in obtaining an acquittal of the charged offense.[37]

---

[37] The trial court's subsequent comments at a later hearing that it actually did believe the complainant's testimony regarding penetration are, of course, without legal consequence and only serve to reflect poorly on the judge's initial verdict.

But the trial court sua sponte went on to convict defendant of two counts of the separate, uncharged offense of CSC II, citing police testimony that defendant had admitted sexual contact with the victim. Had defense counsel known that the trial court was going to consider the uncharged cognate lesser offense of CSC II as a possible verdict, defense counsel might have requested a new preliminary examination, and he may have adopted a different strategy at trial,[38] including, at least, objecting to the police officer's testimony regarding his alleged admission of a sexual touching.[39] Indeed, if defendant knew he might be convicted of CSC II, defense counsel may not have withdrawn his motion to suppress evidence of the statement or for a *Walker*[40] hearing just before the trial began.

---

[38] As was stated in *People v Adams,* 202 Mich App 385, 391; 509 NW2d 530 (1993), where offenses have different elements

> the defendant may well prepare his defense, including the cross-examination of prosecution witnesses, in an entirely different manner for the lesser offense than he would for the greater offense. However, once the trial is completed . . . it is . . . impossible . . . for the defendant to adjust his trial strategy to encompass the newly added offense.

[39] Justice Young argues in his partial dissent that defense counsel actually challenged the confession. *Post* at 12. While defense counsel challenged whether a confession of sexual touching was made in his closing argument, he did not object when the police officer testified that defendant had made such an admission.

[40] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965). Justice Young argues in his partial dissent that there is a complete dearth of coercion or involuntariness. *Post* at 13. This is not too surprising given that no hearing was held. Indeed, if the motion to suppress the defendant's statement was denied and he was told he was also facing conviction for CSC II, he may well have sought a plea bargain.

It is also the case that defendant may not have waived a jury trial if he had known that a conviction of CSC II was going to be a considered as a permissible verdict.[41] It is impossible for the prosecutor to prove that, in an alternative trial where defendant was provided with notice defendant still would have been convicted of CSC II.[42] Accordingly, the trial court's improper consideration of a cognate lesser offense after its failure to inform defendant that he might be subject to conviction for CSC II cannot be deemed harmless.

## V. RESPONSE TO JUSTICE CORRIGAN'S DISSENT

Justice Corrigan believes the word "inferior" in MCL 768.32(1) only refers to necessarily included lesser offenses if the charged offense is not a formally degreed offense. We, in contrast, conclude that the word "inferior" in MCL 768.32(1) has the same meaning, i.e., all the elements of the lesser offense are included in the greater offense, no matter the charge. As previously set forth, case after case, starting with *McDonald* all the way through *Nickens*, have indicated that a lesser crime was not "inferior" unless it was contained within the higher

---

[41] Justice Corrigan asserts in her dissent that defense counsel likely waived the right to a jury in hopes that the trial court would convict defendant of a lesser charge. *Post* at 22 n 8. While we are sure this does happen in some cases, we find it significant that defense counsel did not argue, even in the alternative, for the court to convict defendant of a lesser offense if it was not going to acquit the defendant of CSC I.

[42] Justice Corrigan argues in her dissent that a rational view of the evidence supported the CSC II convictions. *Post* at 23. While this is true, it is irrelevant because defendant had no notice that such a verdict would be permissible given that he was charged with CSC I.

charged offense.  Justice Corrigan accuses the majority of giving the word "inferior" a "hidden, counterintuitive meaning." *Post* at 7.  But we have simply given it the meaning found in case after case after case.  Indeed, Justice Corrigan has not cited, and cannot cite, a single case where this Court held that pursuant to MCL 768.32(1) a cognate lesser offense was "inferior" to a higher charged offense.[43]  Justice Corrigan further claims that *Hanna* and *Cornell* "simply presumed that formally degreed offenses were within the scope of the statute."

---

[43] Justice Corrigan does point out that, before 1980, second-degree murder contained an element not contained within first-degree felony murder, and argues from this that notice would have been a problem under our analysis.  *Post* at 7.  First, in our past jurisprudence, it typically was the defendant who requested a jury instruction regarding a cognate lesser included offense.  And even on those occasions when a prosecutor requested an instruction regarding a cognate lesser included offense, the defendant frequently did not object because being convicted of the cognate offense (e.g., second-degree murder) was preferable to being convicted of the charged offense (e.g., first-degree felony murder).  Second, before 1980, this Court's caselaw allowed jury instructions regarding cognate lesser included offenses.  Thus, defendants were on notice that such an instruction might be given and there was no notice problem.  In contrast, the case at bar was tried after *Cornell* forbade the giving of cognate lesser offense jury instructions.  Defendant had every right to expect his trial to be conducted consistently with *Cornell*.  Indeed, if defendant had feared a conviction of CSC I and requested the court to consider convicting him of CSC II, the prosecutor would have had every right to object and ask the court to comply with *Cornell* by only considering the charged offense of CSC I.  If defense counsel had requested the court to consider convicting defendant of CSC II as a lesser offense, defendant would not be entitled to relief pursuant to the "invited error" doctrine.  As we explained in *People v Jones*, 468 Mich 345, 352 n 6; 662 NW2d 376 (2003), a party cannot seek appellate review of an instruction that the party itself requested.  Appellate review is precluded because when a party invites the error, the party waives the right to seek appellate review, and any error is extinguished.  *Id.*

(continued…)

17

*Post* at 5 (emphasis omitted). We cannot agree. Given that some lesser degreed offenses are cognate lesser offenses containing an element not included within the higher charge, the language of the Court in *Hanna* and *Cornell* actually suggests that the Court did not consider such cognate lesser offenses to be "inferior."[44]

Justice Corrigan correctly asserts that CSC II, III, and IV "carry less severe maximum punishments," *post* at 2, than CSC I. She argues from this that CSC II, III, and IV are thus automatically "inferior" to CSC I. However, Justice Corrigan neglects to consider the fact that, under her analysis, CSC III is an inferior offense to CSC II. Yet, both CSC II and CSC III carry the same penalty—a 15-year maximum sentence. It is also the case that a defendant convicted of CSC II is eligible for probation, whereas a defendant convicted of CSC III is precluded from receiving a probationary sentence. Thus, one cannot legitimately claim that CSC III is an inferior offense to CSC II on the basis of the sentencing consequences of a conviction. Moreover, even though CSC II, III, and IV carry less severe maximum sentences than CSC I, this does not prove that they are inferior offenses to CSC I, given that in *Cornell* we specifically indicated that the word "inferior" in

---

(…continued)
We do note that the prosecution could have avoided the problem this appeal presents if it had simply charged defendant in the alternative with CSC I and CSC II.

[44] As stated in *Hanna,* the statute applies "wherever the charge for the higher grade includes a charge for the less." *Hanna, supra* at 321. As stated in *Cornell*, *supra* at 347, MCL 768.32 only permits consideration of "necessarily included lesser offenses."

the statute does not refer to inferiority in the penalty associated with the offense but, rather, to the absence of an element that distinguishes the charged offense from the lesser offense. *Cornell, supra* at 354.[45]

In her dissent, Justice Corrigan, *post* at 15 n 4, attempts to distinguish the United States Supreme Court opinion in *Schmuck,* stating that the case did not address formally degreed inferior offenses and did not hold that the constitution mandates the test set forth in FR Crim P 31(c). We find the cited language from *Schmuck* fully applicable.[46] The Court said it was "ancient doctrine of both the

---

[45] Justice Corrigan asserts, *post* at 27, that the sensible rule that *Cornell* restored to Michigan is "being upset." To the contrary, one of the rules of *Cornell* was that no cognate lesser offense instructions could be given. It is Justice Corrigan who would blur this bright-line rule and allow cognate lesser offense instructions whenever a defendant is charged with one of the many degreed offenses. Justice Corrigan further complains, *post* at 26, that prosecutors will now be forced to charge defendants in the alternative whenever they wish a fact-finder to be able to convict a defendant of a cognate lesser offense of a degreed offense. We do not see this as a negative development because it provides notice to a defendant of the crimes of which he may be convicted.

[46] Justice Corrigan cites *Hopkins v Reeves*, 524 US 88; 118 S Ct 1895; 141 L Ed 2d 76 (1998), for the proposition that some states use the cognate evidence test for lesser included offense instructions. *Post* at 15 n 4. This, of course, is true and used to be true in Michigan. But this does not take away from the fact that a defendant is constitutionally entitled to notice of the crime with which he or she is charged. Indeed, *Hopkins* actually supports our opinion because it specifically states that it is a "distortion" to allow a defendant to be convicted of a cognate offense because it would allow the jury to find a defendant guilty of elements the state had not attempted to prove. *Id*. at 99. Such a "distortion" occurred in this case. Justice Corrigan also cites *Paterno v Lyons*, 334 US 314; 68 S Ct 1044; 92 L Ed 1409 (1948). In that case the defendant was charged with receiving stolen property. Five months later he pleaded guilty of attempted larceny. Years later the defendant argued that because attempted larceny was not a necessarily included lesser offense of receiving stolen property, he did not have constitutional

(continued…)

common law *and of our Constitution* that a defendant cannot be held to answer a charge not contained in the indictment brought against him." *Schmuck, supra* at 717.[47] Thus, it is clear the Court did rely on the constitution, and, in actuality, it did address formally degreed inferior offenses to the extent they might contain an element not in the charged offense by stating that a defendant could not be held to answer for such a lesser charge without violating the common law and the constitution. Moreover, we indicated in *Cornell*, *supra* at 356, n 9 that "[w]hile MCL 768.32 does not use the same phrasing as FR Crim P 31(c), which refers to 'an offense necessarily included in the offense charged,' as we have already explained, the wording of MCL 768.32 also limits consideration of lesser offenses to necessarily included lesser offenses."

Justice Corrigan also accuses the majority of invoking the constitutional avoidance doctrine without first identifying an ambiguity in the statute. *Post* at 13. Our caselaw has interpreted "inferior" to mean included within the higher charged offense for over 130 years, whereas Justice Corrigan would interpret "inferior" to mean an offense with a lesser number only, *even if the lesser*

---

(…continued)
notice. Not surprisingly, the United States Supreme Court found that the defendant had sufficient notice of the crime to which he pleaded guilty. The situation in the case at bar is far different. Indeed, if defendant, after having been charged with CSC I, had later pleaded guilty of CSC II then argued that he did not have sufficient notice of the CSC II charge, his claim would be summarily rejected.

20

*numbered offense contains an element not within the charged offense.* Surely, there is no error in the majority's pointing out that the dissent's interpretation of the statute would render it unconstitutional and that this is an additional reason supporting the majority's decision to maintain the interpretation of the statute that has prevailed for 130 years.

Justice Corrigan asserts that there is no "constitutional dilemma," *post* at 1. But even the prosecution, while arguing that this is not such a case, acknowledges in its brief that "given the modern rise of complex offenses with multiple alternative elements, it is possible for due process to be raised in a given case . . . ." Moreover, we noted with approval in *Cornell*, *supra* at 346, that one of Justice Coleman's concerns with giving jury instructions for cognate lesser offenses was that it threatens a defendant's due process rights. Thus, it is wholly inaccurate for the dissent to deny that a constitutional problem exists."

Justice Corrigan cites two foreign cases, *Salinas v United States*[48] and *State v Foster*,[49] for the proposition that a defendant may be convicted of a lesser degreed offense without violating a defendant's constitutional right to notice. Neither case supports the dissent.

---

(…continued)

[47] Justice Corrigan effectively reads the words "except when a defendant is charged with a degreed offense" into the Supreme Court's words.

[48] *Salinas v United States,* 277 F2d 914 (CA 9, 1960).

[49] *State v Foster*, 91 Wash 2d 466; 589 P2d 789 (1979).

In *Salinas,* the defendant was charged with arson in the first degree and convicted of arson in the second degree. In rendering its opinion, the *Salinas* court first reiterated that an information or indictment must contain an averment of every essential element of the crime with which a defendant is charged in order that he or she may prepare his or her defense. As applicable here, it is without contest that the information did not allege that defendant had contact with the victim's groin "for the purpose of sexual gratification" as the trial court concluded. Next, the *Salinas* court indicated that first- and second-degree arson denounce "but one crime" and that "an indictment charging the more aggravated degree necessarily contains all of the elements of the lower degree." *Salinas, supra* at 918. Indeed, the *Salinas* court stated that it could not perceive how one could commit first-degree arson without having committed second-degree arson. The case at bar is dissimilar because all agree that it is possible to commit CSC I without having committed CSC II.

In *State v Foster* the defendant was charged with first-degree assault but the jury convicted him of second-degree assault. The *Foster* court, stating that it was following the *Salinas* court, indicated that it viewed assault as "one offense" and that the two crimes are not "separate and distinct" from one another." *Foster, supra* at 472. This is a different situation from the case at bar because CSC I and CSC II are not but one crime and, while some of their elements overlap, the crimes are properly viewed as separate and distinct.

22

Finally, Justice Corrigan, *post* at 9-13, posits that, notwithstanding the contrary holding in *People v Lemons,* CSC II may not be a cognate lesser offense of CSC I, i.e., it may be a necessarily included lesser offense. Justice Corrigan notes that *Lemons* was decided before *Cornell* and before *People v Tombs*, 472 Mich 446; 697 NW2d 494 (2005).[50] Justice Corrigan, *post* at 10, asserts that these "major adjustments" in our lesser included offense jurisprudence warrant at least a reexamination of the pre-*Cornell* analysis in *Lemons.* The dissent also notes that before *Lemons* was decided, the Court of Appeals had held in three cases that CSC II was a necessarily included lesser offense of CSC I.[51]

First, we note that the prosecutor has not made this argument. Second, the subset of elements test for determining whether an offense is a necessarily included lesser offense or a cognate lesser offense has not changed and was not affected in any way by *Cornell*.[52]

---

[50] In *Tombs,* this Court recognized the longstanding principle that a criminal statute is presumed to include a criminal intent or *mens rea*, absent an express or implied indication that the Legislature wanted to dispense with it. *Id.* at 456-457 (opinion by Kelly, J.), 466 (opinion by Taylor, C.J.). This rule is presumed because otherwise innocent conduct would be criminalized.

[51] Justice Corrigan, however, neglects to note that in at least three other cases the Court of Appeals had held that CSC II was a cognate lesser offense of CSC I. See, e.g., *People v Wilhelm (On Rehearing)*, 190 Mich App 574, 577; 476 NW 2d 753 (1991), *People v Norman,* 184 Mich App 255, 259-260; 457 NW2d 136 (1990), and *People v Garrow*, 99 Mich App 834; 298 NW2d 627 (1980). Needless to say, the cases cited by Justice Corrigan were overruled by *Lemons.*

[52] As noted in footnotes 13-14 of this opinion, an offense is considered a necessarily included lesser offense if it is impossible to commit the greater offense without first having committed the lesser offense, whereas a cognate lesser offense

(continued…)

Justice Corrigan argues that *Tombs* modified the intent that must be proven for a conviction of CSC I. It is noted that *Lemons* states that the sexual penetration necessary for a conviction of CSC I "can be for any purpose." Justice Corrigan asserts that, now that *Tombs* requires the showing of a criminal intent, the broader criminal intent requirement of CSC I required by *Tombs* "plainly includes the narrower intent required for CSC II." *Post* at 10.

Assuming, without deciding, that the Legislature did not include any express or implied indication that it wanted to dispense with a criminal intent requirement for all the ways that CSC I may be committed,[53] we are unpersuaded that CSC II is actually a necessarily included lesser offense of CSC I rather than a cognate lesser offense.[54]

*Lemons* indicated that the sexual penetration necessary for a conviction of CSC I "can be for any purpose." We take this to mean that the prosecution need

---

(…continued)
is one that shares elements with the charged offense but contains at least one element not found in the higher offense. *Cornell, supra* at 345.

[53] As explained more fully in Justice Markman's concurrence, sometimes CSC I is in fact a strict liability offense. *People v Cash*, 419 Mich 230, 240; 351 NW2d 822 (1984) (reasonable mistake of age is not a defense to a charge of having sex with a minor). This fact alone shows that CSC II is not a necessarily included lesser offense of CSC I because CSC II always requires proof of a general criminal intent. Thus, it is possible to commit CSC I without having committed CSC II. Neither Justice Corrigan nor Justice Young deals with this fact.

[54] We note that Justice Corrigan, Justice Young, and Justice Weaver would overrule *People v Lemons* (an opinion authored by Justice Boyle and decided
(continued…)

not prove a particular purpose. In any event, the question is whether the elements of CSC II are "completely subsumed" in the greater offense of CSC I, *Mendoza, supra* at 532 n 3, that is, whether it is impossible to commit CSC I without having committed CSC II. *People v Nickens*, 470 Mich 622, 633 n 8; 685 NW2d 657 (2004).

As previously indicated, CSC II can be proven by showing one of several intents: intentional touching of intimate parts that can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for revenge, or to inflict humiliation, or out of anger. MCL 750.520a(o).

MCL 750.520b provides that "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration" and "sexual penetration" is statutorily defined to mean sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, MCL 750.520a(p).

We are satisfied that a defendant perpetrating a sexual penetration punishable by the CSC I statute could have a criminal/non-innocent intent that could not reasonably be construed as coming within one of the intents listed in the

---

(…continued)
unanimously) without any argument or briefing from the prosecution that it was
(continued…)

CSC II statute.[55]   That is, the limited number of specific intents that establish a CSC II are not the only criminal/non-innocent intents that exist that could support a conviction of CSC I.   Although one of the criminal intents necessary for a conviction of CSC II will frequently be present when a sexual penetration occurs, one of those intents will not always be present.   Other criminal/non-innocent intents can be present.   Thus, it is possible to commit CSC I without first having committed CSC II, and the elements of CSC II are not "completely subsumed" in the greater offense of CSC I.   Accordingly, CSC II is properly considered a cognate lesser offense of CSC I.

VI.  CONCLUSION

(…continued)
wrongly decided.

[55] The following types of situations would appear to constitute CSC I without reasonably being construed as an act involving one of the CSC II intents. A defendant who, because of a sadistic personality or a perverse curiosity, penetrates a stranger's rectum with an object.  The intent to do this, however characterized, could hardly be reasonably construed as an act done for the purpose of sexual arousal or gratification, or for revenge, or to inflict humiliation, or out of anger.  Or, should a man, to avoid child support, attempt to induce a miscarriage of the child borne by his girlfriend by penetration of her womb through her vagina with a sharp object, his intent would be financial and his behavior could not reasonably be construed as an act done for the purpose of sexual arousal or gratification, or for revenge, or to inflict humiliation, or out of anger.  Finally, if a prisoner assaults another inmate by sticking his or her finger up the other inmate's rectum because the victim was rumored to have smuggled narcotics into the prison in his or her rectum, such a defendant's behavior could hardly be reasonably construed as an act done for the purpose of sexual arousal or gratification, or for revenge, or to inflict humiliation, or out of anger.  These examples, while admittedly unpleasant, and perhaps even bizarre, make the point that it is possible to commit a CSC I without having necessarily committed a CSC II.

For the reasons we stated, we hold that MCL 768.32(1) does not allow a defendant to be convicted of cognate lesser offenses even when the Legislature has divided the crime into degrees. The Court of Appeals judgment is affirmed, and the case is remanded to the trial court for an order of discharge.

Clifford W. Taylor
Stephen J. Markman

27

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                   No. 127897

MAURICE LAMONT NYX,

    Defendant-Appellee.

_____

MARKMAN, J. (*concurring*).

I concur fully with the lead opinion, but write separately to articulate why the rule proposed in Justice Corrigan's dissent is particularly unfair in the context of the criminal sexual conduct (CSC) statutes, which are at issue in this case.

Generally, a "degreed" offense criminalizes a single act and defines the maximum punishment for that act on the basis of the circumstances underlying its commission. For example, the home invasion statute criminalizes the act of breaking and entering a dwelling or entering a dwelling without permission. However, a defendant's maximum term of incarceration is determined by the circumstances surrounding the commission of that act. Thus, a defendant who intends to commit or actually commits a felony while engaged in that criminal act is guilty of first-degree home invasion and subject to a statutory maximum sentence of 20 years in prison. MCL 750.110a(2) and (5). A defendant who

intends to commit or actually commits a misdemeanor while engaged in that same criminal act is guilty of third-degree home invasion and is subject to a maximum penalty of 5 years in prison. MCL 750.110a(4) and (7). However, in either case, a defendant charged with home invasion is on *notice* that he or she has been charged with a single criminal act-- breaking and entering or entering without permission-- and that his or her term of incarceration will be determined by the circumstances surrounding the commission of that act.

In contrast, the CSC statutes are unique among the "degreed" offenses because they apply to related, but distinct, criminal sexual acts-- criminal sexual penetration and criminal sexual contact. In order to obtain a conviction for first-degree CSC (CSC-I) or third-degree CSC (CSC-III), the prosecutor must prove that the defendant engaged in "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body," MCL 750.520a(p), under one of a variety of circumstances. MCL 750.520b(1) and 750.520d(1). Thus, the relationship between CSC-I and CSC-III is exactly the same as the relationship between other "degreed" offenses, such as home invasion. A defendant charged with CSC-I or CSC-III has notice that he or she is being charged with a single criminal offense-- sexual penetration-- and that the potential term of incarceration will be determined on the basis of the circumstances surrounding the commission of that offense. However, in order to obtain a conviction for second-degree CSC (CSC-II) or fourth-degree CSC (CSC-IV), the

prosecutor must prove that the defendant engaged in the conduct that involved "intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for: (*i*) [r]evenge[,] (*ii*) [t]o inflict humiliation [, or] (*iii*) [o]ut of anger," MCL 750.520a(o), under one of a variety of circumstances. MCL 750.520c(1) and 750.520e(1). In other words, CSC-II and CSC-IV not only contemplate a different criminal act than CSC-I or CSC-III-- sexual contact instead of sexual penetration-- but also include an intent element that the prosecutor is not required to prove in order to obtain a conviction for CSC-I or CSC-III. That is, the prosecutor need only prove sexual penetration to obtain a conviction for CSC-I or CSC-III, while the prosecutor must prove both sexual contact and a bad intent to obtain a conviction for CSC-II or CSC-IV.

Thus, a defendant who is bound over or indicted for CSC-I on the basis of an allegation of sexual penetration has no notice that he or she is also subject to incarceration for engaging in sexual contact with the victim.[1] In the instant case,

---

[1] While the statutes clearly identify CSC-II as a lesser degree of CSC-I, and CSC-IV as a lesser degree of CSC-III, it is critical to recognize that the statutes apply to two essentially distinct and separate criminal acts, each of which requires distinct and separate proofs. This is roughly the equivalent of the Legislature combining the assault and arson statutes, or similarly unrelated statutes, into a new "threatening conduct" statute and then dividing that statute into degrees. Under that scenario, a defendant charged with "first-degree threatening conduct (arson)"

(continued…)

3

defendant likely failed to object to or otherwise refute the introduction of a statement he made to the police admitting sexual contact, because it was not relevant to his defense that no sexual *penetration* had occurred. Moreover, defendant would not have had a strong motivation to object to or otherwise refute any evidence offered by the prosecutor regarding his "intent" in engaging in sexual contact with the victim, because such intent is not relevant in a prosecution for CSC-I and it is not incompatible with the claimed defense that no penetration occurred. Indeed, allowing the admission may have been compatible with a potential defense that the victim exaggerated her encounter with defendant and that, while he may have done something inappropriate, he did not commit CSC-I.[2] Allowing that evidence to be used subsequently to convict the defendant of a separate and distinct offense for which he was not even charged is inherently unfair and, in my judgment, violates a defendant's fundamental right to due

---

(…continued)
could not reasonably be expected to prepare for trial and be fairly placed on notice that he or she could also be convicted of an uncharged assault simply because that assault is labeled as "second-degree threatening conduct (assault)." Similarly, when defendant was charged with CSC-I, he was placed on notice that he was subject to incarceration for committing a criminal sexual penetration. However, charging him with CSC-I did not fairly notify him that he was *also* subject to incarceration for an essentially distinct and separate criminal act, CSC-II.

[2] As the dissent correctly notes, defendant's theory of the case was that *no* sexual contact of any kind occurred between himself and the victim. However, the critical fact remains that defense counsel had no incentive to challenge the admission of the confession because it was not relevant to the charge of CSC-I and because it could have potentially formed the basis of a different theory of defense--namely that the victim had exaggerated the incident.

process. I see little difference in a constitutional sense between defendant in this case, who was convicted of the uncharged offense of CSC-II, and a defendant who was charged with, but ultimately acquitted of, assault with intent to murder, but who was nevertheless convicted of an uncharged felonious assault on the basis that the elements of that offense were proven at trial.

The dissent argues that our decision in *People v Tombs,* 472 Mich 446; 697 NW2d 494 (2005), "has obviously modified our understanding of the intent required to prove CSC I." *Post* at 10. In *Tombs, supra* at 451, this Court stated that "we tend to find that the Legislature wanted criminal intent to be an element of a criminal offense, even if it was left unstated." According to the dissent, *Tombs* calls into question our assertion in *People v Lemons*, 454 Mich 234, 253; 562 NW2d 447 (1997), that "[s]exual penetration [under CSC-I] can be for any purpose." Rather, the dissent argues, a "penetration committed *without a criminal purpose* would likely fail to satisfy the mandates of *Tombs*." *Post* at 11 (emphasis in original). I disagree. *Tombs* did not do away with "strict liability" offenses, but instead correctly acknowledged that such offenses are generally disfavored. One "strict liability" offense that has been recognized by this Court for 85 years is the act of committing sexual penetration with a victim under the age of 16. *People v Gengels,* 218 Mich 632; 188 NW 398 (1922). In *Gengels,* the defendant was charged under the former statutory rape statute, MCL 750.520, which prohibited "carnal knowledge of a female under 16." The defendant argued that the victim

5

told him she was 18 and, therefore, he was entitled to a defense based on a good-faith or reasonable mistake of age.  We rejected such a defense:

> But in the crime charged here proof of the intent goes with proof of the act of sexual intercourse with a girl under the age of consent.  It is not necessary for the prosecution to prove want of consent.  Proof of consent is no defense, for a female child under the statutory age is legally incapable of consenting.  Neither is it any defense that the accused believed from the statement of his victim or others that she had reached the age of consent." [*Id.* at 641.]

Sexual penetration of a victim under the age of 16 remains a strict liability offense under the current criminal sexual conduct statutes.  *People v Cash*, 419 Mich 230, 240; 351 NW2d 822 (1984).[3]  In *Cash*, the defendant was charged with CSC-III but asserted that he was entitled to a "reasonable mistake of age" defense.  This Court noted that *Gengels* is consistent with the rule of the vast majority of states, and of the federal courts, rejecting the "reasonable mistake of age" defense.  *Id.*  Moreover, *Gengels* is consistent with the common-law definition of "statutory

---

[3] Neither Justice Corrigan nor Justice Young disputes that CSC-I and CSC-III are, in certain circumstances, strict liability offenses.  Given that understanding, the dissenters' argument that CSC-II is a necessarily included lesser offense of CSC-I cannot be maintained.  An offense is considered a "necessarily included lesser offense" when "'it is impossible to commit the greater without first having committed the lesser.'"  *People v Cornell*, 466 Mich 335, 345; 646 NW2d 127 (2002) (citation omitted).  A defendant may be convicted of CSC-I without the jury making any finding *at all* regarding a criminal intent.  However, in order to obtain a conviction for CSC-II, the jury must *always* find beyond a reasonable doubt that the defendant intended to commit an act that can "reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner."  Because it is possible to commit CSC-I without having first committed CSC-II, the latter is a cognate lesser offense and, pursuant to *Cornell,* may not be considered.

rape" as a strict liability offense. Because there was no indication that the Legislature intended to abrogate the common law, this Court held that sexual penetration of a victim who is at least 13 but less than 16 constitutes a strict liability offense and, therefore, "reasonable mistake of age" is not a defense. *Id.* at 250.

In the instant case, defendant was charged with the sexual penetration of a victim who is at least 13 but less than 16. Had defendant met a victim of the same age on the street and engaged in the same conduct as was charged, he would have been strictly liable for CSC-III. MCL 750.520d(1)(a). However, because defendant is "in a position of authority over the victim and used this authority to coerce the victim to submit," MCL 750.520b(1)(b)(*iii*), the presence of that additional aggravating *fact* subjects him to punishment for CSC-I. The existence of an aggravating fact does not impose a new *mens rea* on an act for which defendant would otherwise be strictly liable under the CSC-III statute. Because defendant remains strictly liable for engaging in the sexual penetration of the underage victim in this case, I do not believe that *Tombs* requires any showing of criminal intent.[4]

Stephen J. Markman

---

[4] Even if I were to agree that the Legislature did not wish to dispense with a criminal intent requirement for the crime of CSC-I, I would still concur with the lead opinion that CSC-II is not a necessarily included lesser offense of CSC-I. As noted by the lead opinion, CSC-I can be committed in a variety of ways without implicating one of the CSC-II states of mind. *Ante* at 26 n 55.

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                  No. 127897

MAURICE LAMONT NYX,

      Defendant-Appellee.

_____

CAVANAGH, J. (*concurring in the result only*).

I concur with the result reached by the lead opinion affirming the Court of Appeals decision to vacate defendant's conviction for second-degree criminal sexual conduct (CSC II), MCL 750.520c. Defendant did not have adequate notice that he faced the charge of CSC II, so convicting him of that offense would violate his right to due process. However, I do not join the lead opinion in full because, as Justice Corrigan has noted, I believe the lead opinion's characterization of the word "inferior" is contrary to the established definition and historical use of the term. See *People v Mendoza*, 468 Mich 527, 550-551; 664 NW2d 685 (2003) (opinion by Cavanagh, J.).

                                        Michael F. Cavanagh
                                        Marilyn Kelly

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v                                  No. 127897

MAURICE LAMONT NYX,

       Defendant-Appellee.

_____

YOUNG, J. (*concurring in part and dissenting in part*).

I concur in that portion of the lead opinion that concludes that, where an accused is charged with an offense "consisting of different degrees," MCL 768.32(1) permits the accused to be found guilty of an inferior offense as that term has been defined in *People v Cornell*.[1] I believe that the statute permits a defendant to be found guilty of a necessarily included lesser offense, but not a cognate lesser offense, of the charged offense.

However, I disagree with the lead opinion's conclusion that the statute has been violated. Because it is impossible to commit first-degree criminal sexual conduct (CSC I), MCL 750.520b, without first having committed second-degree criminal sexual conduct (CSC II), MCL 750.520c, CSC II is a necessarily included lesser offense of CSC I. Therefore, the trial court was free to find, on the basis of

---

[1] 466 Mich 335; 646 NW2d 127 (2002).

the victim's testimony as well as defendant's confession, defendant guilty of second-degree criminal sexual conduct. Moreover, even if an error had occurred in this case, the unpreserved error would be harmless under plain error review. Because the lead opinion concludes otherwise, I dissent. I would reverse the judgment of the Court of Appeals and remand the case for consideration of defendant's remaining appellate issues.

## I. FACTUAL BACKGROUND AND TRIAL COURT DECISION

Because the lead opinion's description of the facts is so divergent from my own, I provide the following facts, taken from the trial record.

The testimony in this case indicates that on two separate days defendant, the dean of students at a charter high school, led the victim into a dark, deserted stairway at the high school and sexually assaulted her.[2] The victim testified that on the first occasion, defendant penetrated her vagina with his finger and his penis. The victim testified that during the second incident, occurring two days later, defendant both fondled and digitally penetrated her vagina, but was interrupted when another student, the victim's friend, attempted to open the door to the

---

[2] Testimony provided by a school official indicated that this stairway was off limits to students and was generally chained and padlocked shut. Only four school personnel had keys to the padlock, including defendant. An internal investigation revealed that the light fixture in the stairway was not functional, consistent with the victim's testimony that the stairway was completely dark.

stairway.[3] This testimony was corroborated by the student, who testified that she opened the door to the stairway and it "shut right back."[4]

The second stairway incident was also consistent with a statement given by defendant during a police interview in which he described the victim as the aggressor in the sexual encounter. In his statement, defendant told the officer that the victim "had been following him for the last two weeks," that her following him "bothered him," and that he went to the dark, off limits stairway area with the victim. Defendant stated that upon arriving in the deserted stairway, the victim pulled her pants down, "grabbed his penis, and attempted to put it inside her vagina." Defendant further stated that "his hand went between [the victim's] legs, touching her vagina." However, defendant indicated that the incident ended when "someone came to the door" and defendant "pushed the door back with his arm."

In rendering its verdict, the trial court observed that the victim's testimony regarding being with the defendant in the dark stairway was substantiated by the witness's testimony, and was "also corroborated by what the defendant admits

---

[3] The victim testified that defendant immediately pushed the door closed as it started opening.

[4] The witness testified that she was "worried" and started looking for the victim. The witness went to the stairway area because the victim had told her the location of the previous incident. The witness also testified that she observed defendant flirting with the victim on several occasions before the incidents, including "digging" in the victim's back pockets and jacket pockets that were "located over her breasts."

3

happened."[5]    Noting that there were some inconsistencies in the victim's testimony, the trial court ruled that it was basing its verdict on what it could "rely upon"—defendant's admission that he touched the victim's vagina.  The trial court found defendant guilty of two counts of CSC II,[6]    finding that defendant "intentionally touched the groin area or genital area of the complainant, and that this was done for sexual purposes."[7]

## II. CSC II IS A NECESSARILY INCLUDED LESSER OFFENSE OF CSC I

The lead opinion cites *People v Lemons*[8] for the proposition that CSC II is a cognate lesser offense of CSC I because CSC II contains an additional "element" that is not found in CSC I.  However, as explained below, the plain language of

---

[5] The trial court subsequently expressed disbelief that any "teacher would allow themselves [sic]" to be in an unlit stairway area "with a child."  However, the trial court noted that "not only the complainant says it happened, her friend says it happened, and even the defendant admits that it happened."

[6] By the trial court's own admission, it convicted defendant of CSC II and impliedly acquitted defendant of CSC I although the court subsequently acknowledged that "[t]he People established CSC I."  The court "hop[ed] that by compromising a verdict," it would give "the defendant a break" and that he "wouldn't have to go to prison."  The trial court "was surprised," however, to find that defendant had two prior felony convictions that negatively affected his minimum sentence range under the sentencing guidelines.

[7] The trial court also ruled that the victim was 13 to 15 years old at the time and that defendant used his position of authority over the victim.

[8] 454 Mich 234; 562 NW2d 447 (1997).  In *Lemons*, the defendant was charged with CSC I for receiving cunnilingus from her son and stepdaughter, both of whom were under 13 years of age.  The defendant sought and was denied a jury instruction on CSC II, the trial judge concluding that oral contact was sufficient to establish cunnilingus.  The *Lemons* Court reversed the Court of Appeals determination that the trial court erred by refusing to instruct the jury on CSC II on two bases.  First, the Court concluded that CSC II was a cognate lesser offense

(continued…)

MCL 750.520b and 750.520c reveals that both crimes contain only two elements. Rather, what the lead opinion refers to as an additional "element" is actually part of the *definition* of one of the two elements. Additionally, the lead opinion independently concludes that CSC II is a cognate lesser offense of CSC I because it is possible to commit CSC I without first having committed CSC II. The lead opinion hypothesizes that a defendant who commits CSC I could possess a criminal purpose "that could not reasonably be construed as coming within the intents listed in the CSC II statute."[9] Ultimately, however, the conclusion that CSC II is a cognate lesser offense of CSC I is premised on a misreading of the relevant statutes.

Both CSC I and CSC II are general intent crimes,[10] each containing two elements.[11] For either crime, a defendant "is guilty of criminal sexual conduct" where the defendant engages in sexual conduct and any of the several delineated

---

(…continued)
because CSC II required proof that the "defendant intended to seek sexual arousal or gratification." *Id*. at 253. Second, the Court concluded that cunnilingus "by definition" did "not require penetration." *Id*. at 255.

[9] *Ante* at 26.

[10] *People v Langworthy*, 416 Mich 630, 645 n 26; 331 NW2d 171 (1982). The *mens rea* requirement of general intent crimes is satisfied by proving that the defendant purposefully or voluntarily performed the wrongful act at issue. *People v Beaudin*, 417 Mich 570, 573-574; 339 NW2d 461 (1983); *Langworthy*, *supra* at 639, 644; *People v Nowack*, 462 Mich 392, 405; 614 NW2d 78 (2000).

[11] As a statutory criminal offense, the establishment of elements is a decision for the Legislature. See *People v Selwa*, 214 Mich App 451, 458; 543 NW2d 321 (1995).

"circumstances" exist.[12] The principal difference between these two offenses is the type of evidence necessary to satisfy the sexual conduct element—CSC I requires that the defendant commit "sexual penetration," while CSC II requires "sexual contact."

Both of the sexual conduct elements are statutorily defined. "Sexual penetration" is defined at MCL 750.520a(p) as

> sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required.

"Sexual contact," on the other hand, is defined at MCL 750.520a(o) as

> includ[ing] the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:

---

[12] These delineated "circumstances" are duplicative, and requires the existence of one of several aggravating factors in addition to the sexual conduct, including: the victim being less than 13 years old, MCL 750.520b(1)(a), 750.520c(1)(a); the victim's young age combined with the familial relationship between the defendant and victim, MCL 750.520b(1)(b)(*i*) or (*ii*), 750.520c(1)(b)(*i*) or (*ii*) or combined with the defendant's use of an authoritative position over the victim, MCL 750.520b(1)(b)(*iii*) or (*iv*), 750.520c(1)(b)(*iii*) or (*iv*); the sexual conduct's occurring during the commission of a felony, MCL 750.520b(1)(c), 750.520c(1)(c); the defendant's use of a weapon, MCL 750.520b(1)(e), 750.520c(1)(e); the defendant's causing personal injury to the victim and using force or coercion to accomplish the sexual act, MCL 750.520b(1)(f), 750.520c(1)(f); or the victim's mental incapacity or physical helplessness combined with personal injury, a familial relationship, or the defendant's use of an authoritative position over the victim. MCL 750.520b(1)(g), 750.520b(1)(h)(*i*), 750.520b(1)(h)(*ii*), 750.520c(1)(g), 750.520(c)(h)(*i*), 750.520c(1)(h)(*ii*).

(*i*) Revenge
(*ii*) To inflict humiliation
(*iii*) Out of anger.

Therefore, under the plain language of the statute, the "sexual contact" element of CSC II is satisfied where there is an intentional touching of either the victim's or actor's intimate parts, and that intentional touching "can *reasonably be construed* as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner" for revenge, to inflict humiliation, or out of anger. *Id.* Contrary to the claims of the lead opinion, the definition of "sexual contact" does not add a *third* element to CSC II; rather, it provides meaning to one of the two elements delineated in MCL 750.520c. This statutory language is clear and includes a "reasonable person" or *objective* assessment of the purpose behind the sexual contact, thereby limiting criminal liability to only those intentional touchings that may "reasonably be construed" as being sexually motivated.

Thus, defendant's claimed *subjective* motivation for committing the sexual touching plays no role under the plain language of the definition of "sexual contact." Certainly, a defendant is free to argue to the jury that the prosecutor has failed to prove the "sexual contact" element of the offense because an objective assessment of the facts and circumstances indicates that the sexual contact was not done for a sexual purpose. However, there is no basis in the statute from which to conclude that defendant's subjective motivation *precludes* a jury from concluding that the element has been proven, and that the sexual touching could be reasonably construed as "being for the purpose of sexual arousal," "done for a sexual

7

purpose," or done "in a sexual manner for . . . [r]evenge[,] to inflict humiliation[,]" or "[o]ut of anger."

As the lead opinion correctly notes, the proper test for determining whether CSC II is a necessarily included lesser offense of CSC I is whether the elements of the lesser offense are completely subsumed in the greater offense, and it is impossible to commit CSC I without having committed CSC II. In order to demonstrate that it is theoretically possible to commit CSC I without having committed CSC II, the lead opinion provides a list of colorful examples of sexual penetration, wherein the defendant claims to have a motivation for the penetration that does not fall within MCL 750.520a(o). In posing these examples, the lead opinion fails to reckon with a critical legal fact: the plain definition of "sexual contact" requires an *objective* assessment of the purpose behind the sexual conduct. Thus, the defendant's *subjective* motivation for the conduct is utterly irrelevant. In each and every one of the examples listed, the "sexual contact" element would be satisfied because a reasonable juror could construe the purpose for the sexual conduct as satisfying MCL 750.520a(o).

Because I believe that the elements of CSC II are completely subsumed in CSC I because it is impossible to commit the greater offense without having committed the lesser offense, CSC II is an "inferior offense" under MCL 768.32(1). Therefore, no statutory violation occurred when the trial court sua sponte found defendant guilty of the necessarily included lesser offense.

## III. HARMLESS ERROR

8

Assuming arguendo that an error occurred in this case, I believe that the error was harmless. As an unpreserved nonconstitutional error, the applicable standard of review is for plain error.[13] Under the plain error rule, defendant must show that an error occurred, that the error was plain, and that the plain error affected a substantial right of the defendant.[14] In order to show that a substantial right was affected, defendant must show that the error affected the outcome of the trial proceedings.[15] Defendant's failure to establish a plain error affecting a substantial right precludes a reviewing court from acting on such an error.[16] However, even where a defendant establishes that the plain error affected a substantial right, reversal is only warranted "'when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . .'"[17]

The lead opinion contends that defendant, being charged only with CSC I, tendered an "all or nothing" defense regarding whether "defendant had sexually

---

[13] *People v Grant*, 445 Mich 535; 520 NW2d 123 (1994). The same standard of review applies to forfeited constitutional errors. *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999).

[14] *Grant,* supra at 552-553; *United States v Olano*, 507 US 725, 731-734; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

[15] *Id*.

[16] *Id*.

[17] *People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006), quoting *Carines*, *supra* at 763 (internal citations and quotation marks omitted); *Olano*,

(continued…)

9

penetrated the complainant."[18]  Thus, defendant's conviction of CSC II resulted in prejudice.  Unfortunately, this assertion is not supported by the trial court record.  The defense theory was not predicated on the claim that no penetration had occurred; rather, the defense theory advanced at trial was that no sexual misconduct of *any kind* occurred.

## THE DEFENSE *ACTUALLY* TENDERED AT TRIAL

The lead opinion states that the error that occurred in this case was not harmless because defendant "may have adopted a different strategy at trial," including "objecting to the police officer's testimony regarding his alleged admission of a sexual touching."[19]  The lead opinion further states that, but for the error, defense counsel "may not have withdrawn his motion to suppress the statement or for a *Walker*[20] hearing just before the trial began."[21]  Similarly, the concurring opinion opines that the error was outcome determinative because of "the critical fact" that "defense counsel had no incentive to challenge the admission of the confession . . . ."[22]

---

(…continued)
*supra* at 736; *Johnson v United States*, 520 US 461, 469-470; 117 S Ct 1544; 137 L Ed 2d 718 (1997).

[18] *Ante* at 14.

[19] *Ante* at 15.

[20] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

[21] *Ante* at 15.

[22] *Ante* at 3 n 2.

All these claims of prejudice, however, are belied by a review of the trial court record, which reveals the *actual defense* presented at trial. The theory of defense presented at trial was that *no sexual conduct of any type* occurred between defendant and the victim, that the victim lied about the alleged incidents, and that the victim had motive to lie because one of her classmates attempted to extort money from defendant.[23] The chosen defense of denying *all* sexual conduct necessarily encompasses denying sexual penetration as well as denying sexual contact. Defense counsel cross-examined prosecution witnesses, focusing on inconsistencies in their testimony in an effort to attack their credibility. The sole defense witness, a math teacher at the school, testified that his attendance records indicated that both witnesses were in his math class at the time of the events, further attacking their credibility. Because the defense presented was a *complete denial* of the alleged events, it is unclear how the defense trial strategy might have changed had defense counsel known that the trial court was going to find defendant guilty of CSC II on the basis of sexual conduct that defendant *admitted committing*.

Moreover, the trial court record conclusively establishes that defense counsel *in fact* challenged the confession by arguing at trial that the inculpatory statement *was never made*. During closing argument, defense counsel forthrightly argued to the trial court that "[t]here were no admissions and no statement made

---

[23] Testimony adduced at trial revealed that after the victim told a classmate about the first incident, the classmate attempted to extort $3,000 from defendant.

11

by Mr. Nyx." Therefore, rather than claim that the statement was involuntary or the product of coercion, defense counsel made the strategic decision to claim that it was not given. While the lead opinion claims that the defendant would have sought suppression of the statement in a *Walker* hearing but for the error, this course of action would unavoidably require acknowledging that an inculpatory statement was given. Such an action would have undermined the actual defense tendered at trial. Thus, I do not share the view of my colleagues that the failure to request a *Walker* hearing is indicative of anything other than the fact that defendant claimed he made no confession of sexual misconduct.

Furthermore, as a *Walker* hearing is designed to test the voluntariness of a confession, the lead opinion fails to recognize that pursuing a *Walker* hearing was the weaker avenue of challenge under the facts of this case. Maurice Nyx, a college educated professional, voluntarily arrived at the police station midday to be interviewed, accompanied by his attorney. He was not in custody during the interview, signed a waiver of rights form before giving the statement, and never asked for his attorney *at any point* during the interview before admitting to the interviewing officer that he volitionally touched the vagina of his 15-year-old student while in a dark, restricted access stairway at the school. In addition to a complete dearth of coercion or involuntariness, the record reveals no factual basis for the majority's conclusion that, but for the error, defense counsel *would have* sought suppression of the confession. Rather, the record reveals no credible basis upon which defendant could have pursued a successful *Walker* hearing.

12

Moreover, given that defense counsel *actually* challenged the confession, it cannot be said that counsel "had no incentive" to do so. Certainly, given defendant's defense theory of complete denial, the existence of defendant's confession makes his theory of defense less probable, providing defense counsel with more than ample incentive to challenge the existence of the confession.

## IV. CONCLUSION

I agree that MCL 768.32(1) permits a defendant to be found guilty of a necessarily included lesser offense, but not a cognate lesser offense, of the charged offense. However, I disagree with the lead opinion's conclusion that a statutory violation has occurred because I believe that CSC II is a necessarily included lesser offense of CSC I. Therefore, the trial court properly found defendant guilty of CSC II, which was amply supported by the victim's testimony as well as defendant's confession. Moreover, assuming that an error had occurred in this case, the unpreserved nonconstitutional error would be harmless under the plain error rule.

I would reverse the judgment of the Court of Appeals and remand the case to that Court to address defendant's remaining appellate issues.

Robert P. Young, Jr.
Elizabeth A. Weaver

13

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

　　Plaintiff-Appellant,

v                                                                    No. 127897

MAURICE LAMONT NYX,

　　Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, J. (*dissenting*).

　　I respectfully dissent. MCL 768.32(1) allows a trier of fact to find a defendant guilty of an "inferior" degree of an offense that "consist[s] of different degrees . . . ." That is precisely what occurred in this case. We do not face any constitutional dilemma requiring the lead opinion's novel approach to the statute. Moreover, because second-degree criminal sexual conduct, MCL 750.520c, (CSC II) is a necessarily included lesser offense of first-degree criminal sexual conduct, MCL 750.520b, (CSC I), the new rule does not govern this case. But if it did, any error would be harmless.

　　Accordingly, I would reverse the judgment of the Court of Appeals and remand the case to that Court to address defendant's remaining appellate issues.

I. INTERPRETATION OF MCL 768.32(1)

MCL 768.32(1) is clear and unambiguous.  It provides:

> [U]pon an indictment for an offense, consisting of different degrees, as prescribed in this chapter, the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to commit that offense.

This plain language indicates that when a defendant is charged with an offense "consisting of different degrees," the fact-finder may acquit the defendant of the charged offense and find him "guilty of a degree of that offense inferior to that charged in the indictment . . . ."  Here, criminal sexual conduct is an offense "consisting of different degrees"—the Legislature has formally divided the offense into degrees and designated them as such.  The highest degree of the offense is CSC I, carrying a maximum sentence of life imprisonment.  The other degrees of CSC carry less severe maximum punishments.  Therefore, under the plain language of MCL 768.32(1), the fact-finder may consider and find a defendant guilty of CSC II, III (MCL 750.520d), or IV (MCL 750.520e) when the defendant is charged with CSC I if a rational view of the evidence supports the conviction.

Although the statutory language is clear, the lead opinion holds that a defendant may not be convicted of an offense of lesser degree unless the test set forth in *People v Cornell*, 466 Mich 335; 646 NW2d 127 (2002), is satisfied.  The lead opinion concludes that *Cornell* bars consideration of lesser offenses whose

2

elements are not subsumed in the charged offense, even where the Legislature has formally denominated an offense as one of inferior degree.

As early as 1869, this Court made clear that the predecessor of MCL 768.32(1) was not *restricted* to formally degreed offenses, but this Court did *not* hold that formally degreed offenses were *excluded* from the scope of the statute. On the contrary, this Court's historical analyses implicitly presumed that formally degreed offenses fell within the statute. In *Hanna v People*, 19 Mich 316, 320 (1869), Justice Christiancy, writing for the Court, stated:

> I do not think this provision was intended to be *restricted* in its application to offenses divided by the statutes contained in this title (which contain all the provisions in reference to crimes), into classes expressly designated by the name of "degrees." Thus confined, it would apply, so far as I have been able to discover, only to the single case of an indictment for murder in the first degree, and would not even include manslaughter as a lower degree of the offense, but only murder in the second degree; since [at the time *Hanna* was decided] murder [was] the only offense divided by the statute into classes expressly designated as "degrees." [Emphasis added.]

Because both the common law and a separate statutory provision already provided for the consideration of second-degree murder, the predecessor of MCL 768.32(1) would have been entirely superfluous if it were limited to that offense. Thus, Justice Christiancy concluded that the predecessor of MCL 768.32(1) must "be construed as *extending* to all cases in which the statute has substantially, or in effect, recognized and provided for the punishment of offenses of different grades,

or degrees of enormity, wherever the charge for the higher grade includes a charge for the less." *Hanna, supra* at 322 (emphasis added).[1]

Similarly, this Court in *Cornell* did not exclude offenses that have been formally divided into degrees from the scope of MCL 768.32(1). Rather, we agreed with the *Hanna* Court that

> the provision was not intended to be *limited only* to those [offenses] expressly divided into "degrees," but was intended to *extend* to all cases in which different grades of offenses or degrees of enormity had been recognized. Moreover the statute removed the common-law misdemeanor restriction. Thus, application of the statute is neither *limited* to those crimes expressly divided into degrees nor to lesser included felonies. [*Cornell, supra* at 353-354 (emphasis added).]

In considering offenses that were *not* formally degreed, we held in *Cornell* that the word "inferior" in MCL 768.32(1) refers "'to the absence of an element that distinguishes the charged offense from the lesser offense.'" *Cornell, supra* at 354, quoting *People v Torres (On Remand)*, 222 Mich App 411, 420; 564 NW2d

---

[1] The central flaw in the lead opinion's historical analysis is that it does not acknowledge or address this language in *Hanna*. The *Hanna* Court stated in no uncertain terms that the statutory provision was not *restricted* to formally degreed offenses, *not* that it *excluded* such offenses. *Id.* at 320.

The lead opinion's suggestion that MCL 768.32(1) codifies a historical common-law rule barring consideration of lesser degreed offenses is mistaken. First, no authority could be found to establish the existence of any such rule for formally degreed offenses. And even if such a common-law rule did exist, MCL 768.32(1) did not codify the rule. On the contrary, the statute *abrogated* any such rule by squarely providing that where an offense is divided into degrees, the fact-finder may convict the defendant of an inferior degree of the charged offense. See *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006) ("The Legislature has the authority to abrogate the common law.").

149 (1997). Thus, we held that a trier of fact may not consider "cognate lesser offenses, which are only 'related' or of the same 'class or category' as the greater offense and may contain some elements not found in the greater offense." *Cornell, supra* at 355. Further, we held "that a requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *Id.* at 357.

It is perfectly clear, then, that both *Hanna* and *Cornell* simply *presumed* that formally degreed offenses were within the scope of the statute. Our decision in *Cornell* merely explicated a tool of construction for determining whether an offense is "inferior" where the Legislature has *not* formally denominated it as such. Where the Legislature *has* expressly divided an offense into degrees, as it has with criminal sexual conduct, no construction is necessary. *By legislative definition*, criminal sexual conduct is an offense "consisting of different degrees," and application of the *Cornell* test is thus unnecessary. CSC II is a degree of the offense that the Legislature has expressly designated as "inferior" to CSC I.

The new rule—that a *legislatively denominated* lesser degree is not an "inferior" degree—reflects a lack of deference to the Legislature's authority to denominate an offense as "inferior." Unquestionably, the power to define crimes is wholly a *legislative* function. *People v Calloway*, 469 Mich 448, 451; 671 NW2d 733 (2003). The Legislature thus acted within its proper sphere of

5

constitutional authority when it (1) enacted MCL 768.32(1) permitting the fact-finder to consider an inferior degree of the charged offense and (2) chose to categorize CSC II as a lesser or inferior degree of CSC I. We have no authority to override this legislative classification (in the absence of a constitutional flaw).

Having conceded that the Legislature has divided the offense of criminal sexual conduct into degrees, the lead opinion remarkably concludes that CSC II is not an inferior degree of CSC I, even though the degrees of this offense *are legislatively numbered in descending order*, with second-, third-, and fourth-degree criminal sexual conduct as lesser degrees of first-degree criminal sexual conduct.

The lead opinion characterizes our caselaw as precluding "a judge or a jury from convicting a defendant of a cognate lesser offense even if the crime is divided into degrees." *Ante* at 9. The caselaw does not remotely purport to preclude a conviction where *the Legislature itself has formally divided the offense into degrees*.[2]

The lead opinion's claim that it is following 130 years of caselaw, and that my interpretation would require overruling those cases, is therefore wholly unfounded. The lead opinion cites no authority to suggest that the word "inferior"

---

[2] The lead opinion cites *People v McDonald*, 9 Mich 150, 153 (1861); *Hanna*, *supra*; *Torres, supra* at 419-420; *Cornell*, *supra*; *People v Mendoza*, 468 Mich 527, 532-533; 664 NW2d 685 (2003); and *People v Nickens*, 470 Mich 622,

(continued…)

has some hidden, counterintuitive meaning that would render MCL 768.32(1) inapplicable to the very type of offenses described in the statute, i.e., offenses that the Legislature itself has formally divided into degrees.

The new rule also ignores our *history* of allowing a conviction of a formally inferior degree that is not a subset of the elements of the charged offense. Before *People v Aaron*, 409 Mich 672; 299 NW2d 304 (1980), malice was not a necessary element of first-degree felony murder. But second-degree murder *does* require proof of malice, *People v Mendoza*, 468 Mich 527, 534; 664 NW2d 685 (2003). Thus, before *Aaron*, second-degree murder contained an element not required for first-degree felony murder. Yet this Court held consistently, even before *Aaron*, that an instruction for second-degree murder was appropriate where the defendant was charged with first-degree felony murder. See *People v Carter*, 395 Mich 434, 438; 236 NW2d 500 (1975); *People v Treichel*, 229 Mich 303, 307-308; 200 NW 950 (1924). Thus, this Court historically has allowed conviction of a formally inferior degree that is *not* subsumed in the charged offense.

This Court's decision in *People v McDonald,* 9 Mich 149 (1861), further supports my analysis of our historical treatment of lesser included offenses. In *McDonald*, this Court held that assault and battery was included in a charge of

_____

(…continued)
626; 685 NW2d 657 (2004), none of which addressed the application of MCL

(continued…)

7

felonious assault, and thus upheld an assault and battery conviction even though the defendant was charged only with felonious assault. It is possible to commit an assault without committing a battery. See *People v Nickens*, 470 Mich 622, 628; 685 NW2d 657 (2004). Thus, as it is possible to commit a felonious assault without first having committed an assault and battery, *McDonald* confirms that our caselaw has not required a subset of the elements test, contrary to the lead opinion's view.

Further, Justice Cavanagh's concurring opinion in *Mendoza, supra,* supports my historical analysis. In *Mendoza*, Justice Cavanagh opined that limiting the application of MCL 768.32(1) to necessarily included lesser offenses contravened the accepted meaning of the term "inferior." *Id*. at 551 (opinion by Cavanagh, J.). He argued that the statutory term "inferior" authorized a range of convictions broader than necessarily included lesser offenses. He contended that "[a]lthough, the majority attempts to claim its holding has a historical foundation, it, in fact, usurps this Court's longstanding interpretation, which accords with the statute's plain meaning." *Id*. at 554. Thus, Justice Cavanagh would permit the fact-finder to consider a "cognate" offense to the extent that it is "inferior" to the crime charged and supported by the evidence. *Id*. at 554-555.

---

(…continued)
768.32(1) to formally degreed offenses.

8

I continue to support the holdings in *Cornell* and *Mendoza* because they set forth a means of discerning whether a nondegreed offense is "inferior" to the charged offense. But we simply have no authority to impose a judicial gloss on *formally degreed* offenses because MCL 768.32(1) expressly permits the factfinder to consider them. Thus, in the context of formally degreed offenses such as CSC I and II, I agree with Justice Cavanagh's view that there is no historical basis to limit the meaning of the term "inferior" to necessarily included lesser offenses.

## II. IS CSC II NECESSARILY INCLUDED IN CSC I?

Accepting the new rule of criminal law and procedure that a formally degreed offense must satisfy the *Cornell* test, the lead opinion does not explain *why* that rule was satisfied in this case. The lead opinion assumes that CSC II is merely a cognate lesser offense of CSC I, but a serious question exists regarding whether CSC II really is necessarily included in CSC I. We have yet to address this issue in the wake of recent authorities.

In the pre-*Cornell* era, this Court had concluded that CSC II is a cognate lesser offense of CSC I. In *People v Lemons*, 454 Mich 234, 253-254; 562 NW2d 447 (1997), this Court stated:

> CSC I requires the prosecutor to prove "sexual penetration." MCL 750.520b(1); MSA 28.788(2)(1). CSC II requires the prosecutor to prove "sexual contact." MCL 750.520c(1); MSA 28.788(3)(1). Sexual penetration can be for any purpose. MCL 750.520a(l); MSA 28.788(l)(1). The statute defines sexual contact, however, as touching that "can reasonably be construed as being for the purpose of sexual arousal or gratification." MCL 750.520a(k); MSA 28.788(1)(k). Thus, because CSC II requires proof of an

9

intent not required by CSC I—that defendant intended to seek sexual arousal or gratification—CSC II is a cognate lesser offense of CSC I. In short, it is possible to commit CSC I without first having committed CSC II.

The *Lemons* Court acknowledged that CSC II is, in general, factually included in CSC I, "'for sexual penetration is usually for a sexual purpose.'" *Id.* at 254 n 29 (quoting *People v Garrow*, 99 Mich App 834, 839-840; 298 NW2d 627 [1980]). But the *Lemons* Court remained convinced that "the additional intent requirement for CSC II mandates that it be considered a cognate lesser offense of CSC I." *Id.*

Nonetheless, *Lemons* was decided before *Cornell*, when instructions on necessarily included lesser offenses were *mandatory* in the absence of a genuine evidentiary dispute and instructions on nondegreed, cognate offenses were permitted. See *People v Ora Jones*, 395 Mich 379; 236 NW2d 461 (1975). Now, however, in light of *Cornell*, the trier of fact may consider a necessarily included lesser offense only where a rational view of the evidence supports it, and cognate lesser offenses that are not formally degreed may not be considered at all. These major adjustments in our lesser included offense jurisprudence warrant at least a reexamination of the pre-*Cornell* analysis in *Lemons*.

In addition, *People v Tombs*, 472 Mich 446; 697 NW2d 494 (2005), has obviously modified our understanding of the intent required to prove CSC I. That broader criminal intent requirement plainly includes the narrower intent required for CSC II. In *Tombs*, this Court explained that "we tend to find that the Legislature wanted criminal intent to be an element of a criminal offense, *even if it*

10

*was left unstated.*" *Id*. at 451 (opinion by Kelly, J.) (emphasis added). Thus, absent a clear indication that the Legislature intended to dispense with the requirement of a criminal purpose, we will presume from the Legislature's silence that proof of a criminal intent is required. *Id*. at 456-457.

In light of *Tombs*, we should reassess the *Lemons* Court's assertion that "[s]exual penetration [under CSC I] can be for *any purpose*." *Lemons*, *supra* at 253 (emphasis added). A penetration committed *without a criminal purpose* would likely fail to satisfy the mandates of *Tombs*.

The implications of *Tombs* should be considered. If proof of a criminal intent is required in a CSC I case, it is then fair to ask whether the intent element of CSC II is included in the criminal intent required for CSC I. The justices signing the lead opinion ought to carefully consider their assertion that CSC II is not an inferior degree of CSC I.[3]

In fact, the CSC I statute, MCL 750.520b, only prohibits penetrations that are "sexual," and the definitional statute, MCL 750.520a(p), lists types of sexual penetrations, including sexual intercourse, cunnilingus, fellatio, and anal intercourse. The definitional statute for CSC II does not "add" a different sexual-

---

[3] Further, in a series of decisions issued before *Lemons*, the Court of Appeals held that CSC II was a necessarily included lesser offense of CSC I. See *People v Green*, 86 Mich App 142, 150; 272 NW2d 216 (1978) ("Since all of the elements of CSC II are the same as those of CSC I except for penetration, and there cannot be penetration without contact, second-degree CSC is a necessarily

(continued…)

11

purpose component. It merely reiterates that the nature of the contact under the criminal sexual conduct statute must be sexual, just as the penetrations in CSC I cases must be sexual in nature.

I therefore question the lead opinion's contention that the statutory definition of "sexual contact" contains a subjective motivation or specific intent requirement. MCL 750.520a(o) defines "sexual contact" to include

> the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for: (*i*) Revenge. (*ii*) To inflict humiliation. (*iii*) Out of anger.

This language does not prescribe a subjective motivation that must be proven to establish CSC II. Rather, it limits the types of "intentional touchings" that may be considered "sexual contact." Specifically, an "intentional touching" constitutes "sexual contact" only if it "can reasonably be construed" as being for the purpose of sexual arousal or gratification, etc. That is, the statute uses *objective* language indicating that the intentional touching must be susceptible to being *reasonably construed* as reflecting the sexual purposes described in the statute.

_____

(…continued)
included lesser offense of CSC I."); *People v Secreto*, 81 Mich App 1; 264 NW2d 99 (1978); *People v Thompson*, 76 Mich App 705; 257 NW2d 268 (1977).

The lead opinion offers a series of hypothetical situations that satisfy the elements of sexual penetration, but allegedly do not constitute "sexual contact." But those situations fail to honor the statutory definition. Every listed hypothetical situation involves a touching that, whatever the actor's *subjective* motivation, could be *reasonably construed* as being for a sexual purpose identified in MCL 750.520a(o). Thus, these hypothetical situations do not support the lead opinion's holding. On the contrary, they reflect that the lead opinion has replaced the phrase "can reasonably be construed as" in MCL 750.520a(o) with a subjective motivation element.

## III. CONSTITUTIONAL AVOIDANCE

The lead opinion applies the canon of constitutional avoidance. It reasons that applying MCL 768.32(1) to formally inferior degrees that are not subsumed in the charged offense "would render the statute subject to constitutional challenge." *Ante* at 12. The lead opinion perceives "a due process concern . . . because defendants are entitled to know the charges against them." *Ante* at 11. The lead opinion thus adopts an interpretation "that will save the statute." *Ante* at 12.

In invoking the constitutional avoidance doctrine, the lead opinion has omitted a crucial step *by failing to identify any ambiguity in MCL 768.32(1) that would warrant loading the dice in favor of its preferred interpretation.* "The canon of constitutional avoidance comes into play only when, *after the application of ordinary textual analysis*, the statute is found to be *susceptible of more than one*

13

*construction*; and the canon functions as a means of choosing between them."

*Clark v Martinez,* 543 US 371, 385; 125 S Ct 716; 160 L Ed 2d 734 (2005)

(emphasis added; original emphasis omitted).

The lead opinion omits an ordinary textual analysis to explain why MCL 768.32(1) is susceptible of more than one construction. The language allowing a defendant charged with "an offense, consisting of different degrees," to be found "guilty of a degree of that offense inferior to that charged in the indictment . . . ," is not unclear.

As discussed, the statutory language is not difficult to comprehend, and provides notice to the defendant that he should defend against all degrees. Indeed, the lead opinion has acknowledged that criminal sexual conduct is "an offense consisting of different degrees," so it presumably does not find this language ambiguous. And where the Legislature has delineated the degrees of an offense and numbered them in descending order, it has plainly expressed that each subsequent degree is an inferior degree of those that precede it. Thus, the lead opinion's failure to identify an ambiguity renders its dice-loading argument unconvincing.

But even if an ambiguity existed, the lead opinion does not justify its application of the doctrine of constitutional avoidance.

> The doctrine seeks in part to minimize disagreement between the Branches by preserving congressional enactments that might otherwise founder on constitutional objections. It is not designed to aggravate that friction by creating (through the power of precedent)

14

statutes foreign to those Congress intended, simply through fear of a constitutional difficulty that, upon analysis, will evaporate. Thus, those who invoke the doctrine must believe that the alternative is *a serious likelihood that the statute will be held unconstitutional*. Only then will the doctrine serve its basic democratic function of maintaining a set of statutes that reflect, rather than distort, the policy choices that elected representatives have made. For similar reasons, the statute must be genuinely susceptible to two constructions after, and not before, its complexities are unraveled. Only then is the statutory construction that avoids the constitutional question a "fair" one. [*Almendarez-Torres v United States*, 523 US 224, 238; 118 S Ct 1219; 140 L Ed 2d 350 (1998) (emphasis added).]

In my view, there is no "serious likelihood that the statute will be held unconstitutional." *Id.* The lead opinion does not identify any authority holding that due process concerns preclude consideration of an offense that a legislature has *formally denominated* as an inferior degree of the charged offense.[4]

---

[4] *Schmuck v United States*, 489 US 705, 717-718; 109 S Ct 1443; 103 L Ed 2d 734 (1989), does not so hold. In that case, the United States Supreme Court held that Federal Rule of Criminal Procedure 31(c) "speaks in terms of an offense that is 'necessarily included in the offense charged.'" *Schmuck, supra* at 716. Unlike the federal rule, which does not address formally degreed offenses, MCL 768.32(1) permits conviction of an "inferior degree" of the charged offense. The *Schmuck* Court did *not* address *formally degreed* inferior offenses, nor did it hold that the federal constitution mandates the test set forth in FR Crim P 31(c).

The lead opinion highlights language from *Schmuck* stating that it was "ancient doctrine of both the common law and our Constitution that a defendant cannot be held to answer a charge not contained in the indictment brought against him." *Id.* at 717. But the *Schmuck* Court *was not addressing formally degreed offenses*.

The United States Supreme Court has never suggested that due process forbids a conviction of a formally degreed lesser offense. Rather, the Supreme Court has recognized that states employ "a variety of approaches" in determining whether a lesser included offense instruction is warranted. See *Hopkins v Reeves*,

(continued…)

15

In truth, compelling authorities do not raise a serious question regarding the constitutionality of MCL 768.32(1). Indeed, the lead opinion cannot possibly demonstrate a serious likelihood that MCL 768.32(1) will be held unconstitutional, in light of the United States Supreme Court's decision in *Paterno v Lyons*, 334 US 314; 68 S Ct 1044; 92 L Ed 1409 (1948).

In *Paterno*, the Supreme Court upheld a guilty plea to a charge of attempted grand larceny where the defendant was charged with receiving stolen property. Under New York law, attempted grand larceny was not necessarily included in the charged offense of receiving stolen property. *Id*. at 321 n 10. Yet the United States Supreme Court upheld the conviction, noting that "[t]here is close kinship between" the two offenses. *Id*. at 320. The Supreme Court further explained:

> It would be exaltation of technical precision to an unwarranted degree to say that the indictment here did not inform petitioner that he was charged with substantial elements of the crime of larceny thereby enabling him, as a means of cutting his sentence in half, to agree to plead guilty to an attempted larceny. [*Id*. at 321.]

(…continued)
524 US 88, 96-98 & n 6; 118 S Ct 1895; 141 L Ed 2d 76 (1998). In upholding a Nebraska conviction, the Supreme Court in *Hopkins* noted that Nebraska had "alternated between use of the statutory elements test and the cognate evidence test." *Id*. at 98. The analysis in *Hopkins* leaves little doubt that the availability of a lesser included offense instruction in a state criminal trial is generally a matter of state law.

Accordingly, there is no constitutional dilemma justifying an override of the plain language of MCL 768.32(1).

Additional authorities undercut the lead opinion's constitutional avoidance argument. In *Salinas v United States*, 277 F2d 914 (CA 9, 1960), the defendant was charged with first-degree arson in the United States District Court for Alaska. The trial court instructed the jury that the charge of first-degree arson included a charge of second-degree arson. First-degree arson required proof that the defendant had willfully burned "'any dwelling house . . . or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto . . . .'" *Id*. at 916, quoting § 65-5-1, ACLA Supplement. Second-degree arson proscribed burning "any building or structure of whatsoever class or character" not included in the first-degree arson provision. *Id*. The defendant had burned down a restaurant containing living quarters on the second floor. The jury found the defendant guilty of second-degree arson.

The Ninth Circuit Court of Appeals held that the defendant's conviction of the inferior degree of arson did not violate due process. It explained:

> Often a particular crime is graded or classified into degrees "* * * in order that the punishment may be adjusted with reference to the presence or absence of circumstances of aggravation." *Davis v Utah Territory*, 1893, 151 U.S. 262, 266, 14 S. Ct. 328, 329, 38 L. Ed. 153. Where a substantive crime is so divided, the elements necessary to the commission of the crime itself are the same in each instance, but the degree of culpability differs depending upon the category in which the circumstances place the offense. [*Salinas, supra* at 917.]

Thus, "where the indictment sets out a crime *divided into degrees* the defendant is put on notice of the particular offense charged against him together with any

17

aggravating circumstances appearing by additional averments." *Id.* (emphasis added).

The *Salinas* court further explained:

> The well settled rule, recognized in Alaska by two statutes, is that when an indictment charges a crime in which a lesser offense is necessarily included, *or charges a higher degree of a particular offense that is divided into degrees*, the accused, although acquitted of the greater offense or of the higher degree of the same offense may, *consistent with the requirements of due process*, be convicted of a lesser included offense or a lower degree of the offense charged. [*Id.* (emphasis added).]

Notably, one of the Alaska statutes contained language nearly identical to our provision, MCL 768.32(1).[5]

The defendant in *Salinas* argued that second-degree arson was a separate and distinct offense because it was not necessarily included in the charge of first-degree arson. The defendant contended that first-degree arson could be committed without first having committed second-degree arson, thereby failing a test articulated in *Giles v United States*, 144 F2d 860, 861 (CA 9, 1944), and *House v State*, 186 Ind 593; 117 NE 647 (1917). The *Salinas* court rejected that argument:

> This test is of doubtful application in determining whether the elements of a lesser degree of a substantive crime, *divided into several degrees*, are included in a charge of a higher degree of that crime; it is more appropriate where different crimes are being

---

[5] The Alaska statute provided: "'That upon an indictment for a crime consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment and guilty of any degree inferior thereto, or of an attempt to commit the crime or any such inferior degree thereof.'" *Id.* at 918 n 3, quoting § 66-13-73, ACLA.

18

considered. The elements of a single crime divided into degrees are the same in each instance, and only one crime can be committed. The aggravation of the basic offense may vary in each degree; the substantive crime, with its elements, remains the same. The *Giles* case did not seek to apply the above test to determine the sufficiency of an indictment that charged one crime divided into degrees, but rather whether one crime was necessarily included in another, different crime. This was also the situation in the *House* case where the rule originated; *there the court was careful to note specifically that it was not dealing with an offense divided into degrees.*

We are inclined to view the two statutes relating to first and second degree arson as commonly denouncing but one crime—that of arson. As it relates to buildings and structures, this crime is divided into two grades, the one being more aggravated than the other by reason of the particular nature of the building burned, i.e., a dwelling house. Consequently an indictment charging the more aggravated degree necessarily contains all of the elements of the lower degree. [*Salinas, supra* at 918.]

Similarly, in *State v Foster*, 91 Wash2d 466; 589 P2d 789 (1979), the defendant was charged with first-degree assault with intent to kill, and the court instructed on second-degree negligent assault. The jury found the defendant guilty of second-degree negligent assault. The defendant claimed that he was deprived of his constitutional right to notice of the accusation against him, and that he could be convicted of second-degree assault only if it were included in first-degree assault. The Washington Supreme Court rejected this argument:

The general rule regarding this right is that the crimes of which a person can be convicted, and those on which a jury is properly instructed, are limited to those which are charged in the information. . . . There are two exceptions to this rule: (1) where a defendant is convicted of a lesser included offense of the one charged in the information . . . ; and (2) *where a defendant is convicted of an offense which is a crime of an inferior degree to the*

*one charged*, pursuant to RCW 10.61.003. [*Id.* at 471 (emphasis added).]

The Washington statute was worded nearly identically to MCL 768.32(1).[6] The *Foster* court held that "this statute gave appellant sufficient notice that he was subject to a conviction of second-degree negligent assault." *Foster, supra* at 471.

The *Foster* Court also found *Salinas* persuasive:

Similarly [to the analysis in *Salinas*], we conclude that both the first-degree and second-degree assault statutes proscribe but one offense—that of assault. Since the offense upon which the trial court instructed the jury is a lesser degree crime of the one with which he was charged and the two crimes, namely assault, are not separate and distinct from one another, we conclude that appellant was given sufficient notice to satisfy the requirements of [the state constitution] and the Sixth Amendment. [*Id*. at 472.]

Like in *Salinas* and *Foster,* our Legislature has formally divided the offense of criminal sexual conduct into degrees and numbered them in descending order. Thus, criminal sexual conduct is but one offense divided into several degrees, and CSC II is, *by legislative definition*, an inferior offense of CSC I. Defendant received adequate notice of the nature of this charge.

Finally, the lead opinion has offered no reason to believe that MCL 768.32(1) is unconstitutional *as applied to defendant*.[7] MCL 768.32(1) provided

---

[6] The Washington statute provided: "Upon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, *and guilty of any degree inferior thereto*, or of an attempt to commit the offense." RCW 10.61.003 (emphasis added).

20

notice to defendant because the plain language of the statute permits the trier of fact to consider a lesser degree of CSC. Moreover, defendant certainly had notice that a rational view of the evidence supported a CSC II conviction. It was, after all, *defendant's own admission* that he had touched the victim's vagina that led the court to find him guilty of CSC II. It is simply untenable to suggest that defendant

---

(…continued)

[7] See *People v Lynch*, 410 Mich 343, 352; 301 NW2d 796 (1981), citing *United States v Raines*, 362 US 17, 20; 80 S Ct 519; 4 L Ed 2d 524 (1960).

Rather than offering legal analysis to establish that MCL 768.32(1) is unconstitutional *as applied to defendant*, the lead opinion selectively quotes from the prosecutor's supplemental brief. The lead opinion characterizes the prosecutor's supplemental brief as *conceding* that "'given the modern rise of complex offenses with multiple alternative elements, it is possible for due process to be raised in a given case . . . .'" *Ante* at 21. The lead opinion perhaps pointedly omits the prosecutor's subsequent statement that "*this case is plainly not such a case, and this court should await a viable 'as applied' challenge to the statute before addressing that question.*" Prosecutor's supplemental brief, pp 10-11 (emphasis added). Moreover, the chief appellate prosecutor further explains that he "*has, in over 31 years, never seen or heard of such a case actually existing, and does not believe the court will ever encounter one.*" Prosecutor's supplemental brief, p 11 (emphasis added).

Thus, when read in context, the prosecutor's statement is hardly a "concession." The lead opinion offers no evidence to rebut the prosecutor's view that no case implicating due process concerns under MCL 768.32(1) is likely to arise. Thus, the lead opinion not only fails to explain how the statute is unconstitutional as applied to defendant, but it also fails to demonstrate a *serious likelihood* that it will *ever* be held unconstitutional, as the lead opinion *must* do before applying the canon of constitutional avoidance. *Almendarez-Torres*, *supra* at 238.

21

had no notice of his own confession, or that use of that confession somehow violated due process.[8]

In my view, the Legislature is entirely free to correct the lead opinion's rewrite of MCL 768.32(1). The lead opinion has *not* held that the statute is unconstitutional. Instead, the lead opinion has merely applied a canon of *statutory* interpretation known as the doctrine of constitutional avoidance.[9]

## IV. HARMLESS ERROR

Even accepting the lead opinion's contention that an error occurred, it would be harmless.[10] As the alleged error here is unpreserved and nonconstitutional, it is reviewed for plain error affecting substantial rights. *People v Carines,* 460 Mich 750, 764; 597 NW2d 130 (1999).

---

[8] The lead opinion states that defendant may have adopted a different trial strategy, by objecting to police testimony regarding his confession, if he had known the court would consider CSC II. *Ante* at 15. The lead opinion does not reveal how it divined that defendant would have interposed such an objection, nor does the lead opinion identify a source in the record to challenge the admission of defendant's confession. Indeed, defense counsel likely opted for a bench trial with the firm hope that the judge would convict defendant of a lesser offense, even though the defense theory was that no sexual incident occurred.

[9] See *Clark v Martinez*, 543 US 371, 381-382; 125 S Ct 1716; 160 L Ed 2d 734 (2005) (explaining that "[t]he canon is not a method of adjudicating constitutional questions by other means," that "one of the canon's chief justifications is that it allows courts to *avoid* the decision of constitutional questions," and that "when a litigant invokes the canon of avoidance, he is not attempting to vindicate the constitutional rights of others," but rather "to vindicate his own *statutory* rights") (emphasis in original).

[10] Errors regarding lesser included offenses are subject to harmless error review. *Cornell*, *supra* at 361.

In considering whether defendant's substantial rights were affected, I would note that under *Cornell*, the trier of fact may consider an inferior offense only if it is supported by a rational view of the evidence. This aspect of our holding in *Cornell* must apply to all inferior offenses, both formally degreed offenses and those that are inferior under the *Cornell* rule of construction. As we explained in *Cornell*: "To permit otherwise would be inconsistent with the truth-seeking function of a trial, as expressed in MCL 768.29." *Cornell*, *supra* at 357-358.[11] That rationale applies equally here.

In this case, a rational view of the evidence supported the court's decision to convict defendant of CSC II. The victim testified that defendant fondled her vagina. This testimony is consistent with defendant's own *admission,* given during a police interview.[12] Thus, the court's finding that defendant was guilty of two counts of CSC II was permissible under MCL 768.32(1).

---

[11] MCL 768.29 provides, in relevant part:

> It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, *with a view to the expeditious and effective ascertainment of the truth regarding the matters involved.* [Emphasis added.]

[12] Specifically, defendant admitted that while he and the 15-year-old complainant were alone in the stairwell, he "touched her vagina." He stated that the complainant "grabbed his penis, and attempted to put it inside her vagina." Defendant stated that he then "put both his arms around [the complainant] at the time, and his hand went between [her] legs, touching her vagina." Defendant admitted that, when someone came to a nearby door, he pushed the door back with his arm.

23

The lead opinion incorrectly asserts that the defense at trial was focused on a charge that defendant had sexually *penetrated* the victim. *Ante* at 14. Justice Markman's concurrence reflects a similar misunderstanding of the record. He states that defendant "likely failed to object to or otherwise refute the introduction of a statement he made to the police admitting sexual contact, because it was not relevant to his defense that no sexual *penetration* had occurred." *Ante* at 4 (emphasis in original). Justice Markman further characterizes defendant's defense as claiming that "while he may have done something inappropriate, he did not commit CSC I." *Ante* at 4.

In truth, defendant claimed that no sexual touching of any kind occurred, and that he never made the statement to the police. Indeed, defense counsel stated in closing argument that "the question that obviously this Court is left to take a look at is whether beyond a reasonable doubt it's been proven that Mr. Nyx had in fact improper *contact* with this defendant [sic]." (Emphasis added.) Defense counsel then challenged the testimony of prosecution witnesses, noting that there were "contradicting stories" from the complainant and another witness: "It's [sic] contradicting stories as to when it happened, allegedly; what allegedly happened, on what day this allegedly happened." Defense counsel further discussed inconsistencies between the police reports and hospital records regarding the complainant's version of the crime. In short, the defense theory was that no sexual

24

incident occurred, *not* that defendant engaged in sexual contact short of penetration.

Nor did the defense attempt to rely on defendant's confession. The defense strategy at trial was to suggest that *defendant did not make a statement*. During the cross-examination of police witnesses, defense counsel attempted to challenge their credibility. For example, counsel elicited testimony that the officer who took the statement did not record the interview and did not note certain events that occurred during the making of the statement. In closing argument, counsel discussed a notation in a police document suggesting *that no statement was made*.[13] Thus, defense counsel plainly did not rely on the confession to suggest that defendant did something "inappropriate" short of penetration.

For these reasons, the defense at trial would not have changed had defendant known that the judge would convict him of CSC II instead of CSC I. Thus, even accepting the lead opinion's view that an error occurred, I would

---

[13] For example, defense counsel argued:

> The information provided by the officer states that there's the statement. It's not a written statement. It's not reduced to writing. It's not included in the Request for Warrant, although the information provided by both officers is that allegedly it's known on the 21st, and that in fact, looking at Investigator [Audrey] Thomas' request, that it was not a statement made. There were no admissions and no statements made by Mr. Nyx.

Defense counsel was thus challenging *whether the statement was made*. He manifestly was *not* arguing that the statement was correct and that defendant thus engaged in only sexual contact and not penetration.

(continued…)

25

conclude that it did not affect defendant's substantial rights, and that reversal is therefore not required under *Carines*.

## V. RAMIFICATIONS OF THE MAJORITY'S DECISION

The broader consequence of the lead opinion's adoption of its new rule of criminal procedure and new definition of substantive criminal law is that CSC II is no longer an inferior degree of CSC I. Indeed, it seems that any "cognate" degreed offense cannot qualify as an inferior offense.

The Court's decision affects all formally degreed offenses until such time as our appellate courts clarify the status of each degreed offense. Prosecutors will now have the burden of charging each degree of an offense that they wish to have considered, and to present often-confusing alternative arguments and proofs to the trier of fact for each degree of the offense charged. We will face a cottage industry of litigation to decipher whether each formally degreed offense is truly necessarily included or merely cognate.

As the lead opinion acknowledges, our Legislature has chosen to classify many crimes as formally degreed offenses.[14] To avoid claims of ineffective assistance of counsel, defense lawyers must now argue that *any* lesser degreed

---

(…continued)

[14] See *ante* at 10, noting that the list of formally degreed offenses includes, at least, murder, CSC, home invasion, child abuse, vulnerable adult abuse, retail fraud, fleeing and eluding, and money laundering.

26

offense is not truly "inferior." Indeed, counsel's failure to object with regard to a lesser degree at a trial or plea hearing, or affirmative acquiescence in the inclusion of the lesser degree, will allow a defendant to argue on appeal that trial counsel was ineffective. We will spend years sorting out the consequences of this new rule.

The sensible rule that *Cornell* restored to Michigan is being upset by this decision. There are clear practical effects that will follow as a result of the lead opinion. Testifying before a jury is a nerve-wracking experience, and witnesses often offer more tentative statements at trial than those they made during the police investigation. Hence, a prosecutor can never know which statements of a CSC victim may be accepted as true by the trier of fact or the weight that will be given to them. In order to assure that an offender does not escape responsibility for his crime, a prosecutor will now be required to charge CSC II as an alternative count whenever bringing a charge of CSC I, or risk the possibility of acquittal where the victim's testimony at trial may not be as strong as anticipated. The same charging requirement would hold true for any other crime for which this Court has not definitively held that the lesser degreed offense is also a "necessarily included" offense. Thus, this decision heralds a revival of *Ora Jones*. Now, the decision of which cognate lesser offense will be included will move from the end of the trial when proofs have been adduced to the prosecutor's charging decision before any evidence has been presented.

Finally, defendants will also suffer negative consequences with the new rule. Take, for example, a case where the prosecutor has charged a defendant with CSC I involving a 12-year-old girl (and decides not to charge CSC II as an alternative count). If the defendant disputes penetration but not sexual contact, he will face an all-or-nothing verdict instead of offering the jury the reasonable alternative of convicting him of that which he admitted: CSC II.

## VI. CONCLUSION

I would hold that under the plain language of MCL 768.32(1), a fact-finder may convict a defendant of a legislatively denominated inferior degree of the charged offense if a rational view of the evidence supports the conviction. The *Cornell* rule of construction for determining whether an offense is "inferior" does not apply where the Legislature itself has formally divided an offense into degrees. In any event, it appears that CSC II is necessarily included in CSC I, notwithstanding this Court's contrary statement in *Lemons*. Moreover, any error was harmless in light of the fact the defense at trial was that defendant engaged in *no* sexual touching with the complainant. There is no ambiguity in the text of MCL 768.32(1) to warrant application of the canon of constitutional avoidance, nor is there a serious likelihood that the statute will be held unconstitutional. I

28

would thus reverse the judgment of the Court of Appeals and remand the case to that Court to address defendant's remaining appellate issues.

Maura D. Corrigan